**Luke BAILEY et al., Plaintiffs,**

v.

**George ROMNEY, Secretary of the Department of Housing and Urban Development, et al., Defendants.**

**Civ. A. No. 1854–71.**

United States District Court,
District of Columbia.

Dec. 18, 1972.

Motions for Reconsideration June 1, 1973.

Richard E. Carter, Roger C. Wolf, Columbus · Community Legal Services, Washington, D. C., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens, Thomas G. Corcoran, Jr., Joseph M. Hannon, James F. Rutherford, Asst. U. S. Attys., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This matter is before the Court on Plaintiffs' motions for a preliminary injunction and certification as a class action. The controversy centers on the alleged failure of the Secretary of the Department of Housing and Urban Development (HUD), and persons acting under his authority, to comply with the language and intent of the Section 235 Existing Home Program provisions of the National Housing Act.[1] Plaintiffs are purchasers of homes under the Section 235 Program. They seek declaratory relief to the effect that houses sold under this program must meet both the property standards of the Federal Housing Administration (FHA) and the provisions of the local housing code before the mortgages on such houses may be insured under the § 235 program. Plaintiffs further seek reimbursement for structural and other defects present in the homes they purchased that affect the use and livability of the home, and ask this Court to declare the reimbursement regulations promulgated by Defendant Romney to be invalid.

Having fully considered the issues, the Court holds that jurisdiction exists to maintain this suit here, that the exhaustion of remedies doctrine does not apply, that defendants owe a duty to plaintiffs to properly inspect homes under the § 235 program, that reimbursement should be made for those defects that are violations of the statutorily prescribed standard for reimbursement, and that a preliminary injunction should issue to prevent the continuation of irreparable harm to these plaintiffs by application of a standard for reimbursement not in conformity with the statutory requirements. The request for certification as a class action is denied.

Defendants' assertion that the Court lacks jurisdiction over this action because plaintiffs have not exhausted their administrative remedies is without merit. The thrust of this case is that the regulations promulgated by the defendants are void. The Administrative Procedure Act grants this Court jurisdiction to review the regulations to determine whether they conform to the statutory authority of the defendants.[2] In challenging the validity of the regulations, there is no need for these plaintiffs to first exhaust the administrative process as to their claims. Pre-enforcement review of administrative regula-

1. 12 U.S.C. §§ 1701, 1715l(d)(2), 1715z, 1735b(b) (1971).

2. 5 U.S.C. § 704 (1970).

tions is recognized as valid procedure.[3] Moreover, administrative remedies for these plaintiffs are inherently inadequate and are applied in such a manner as to deny plaintiffs' rights under the law.[4]

Defendants also contend that this Court does not have subject matter jurisdiction here because it may not review a discretionary act specifically protected by statute. This argument misconstrues both the nature of plaintiffs' suit and the words of the statute. Plaintiffs attack the validity of the regulations promulgated under 12 U.S.C. § 1735b(c). The establishment of regulations under this law to implement reimbursement for defects is not a discretionary act. Further, the content of these regulations is not discretionary. The regulations must conform to the statutory requirements. This is a question distinct from review of a discretionary act performed under the regulations. · The statute reads:

> The Secretary *shall* by regulations prescribe the terms and conditions [under] which expenditures and payments may be made under the provisions of this section, and his decisions regarding such expenditures and payments, and the terms and conditions under which the same are approved or disapproved, shall be final and conclusive and shall not be subject to judicial review.[5]

The statute clearly makes the decision of the Secretary final upon applications for reimbursement under the promulgated regulations, but does not deny judicial review of the regulations themselves.[6]

Plaintiffs have asserted federal jurisdiction under 28 U.S.C. § 1331, alleging substantial questions arising under the Constitution and laws of the United States. There is no serious contention by the defendants that plaintiffs have not met their burden of establishing jurisdiction under § 1331. All plaintiffs' homes are presently valued by the defendants over the $10,000 jurisdictional minimum, and plaintiffs desire to rescind their purchase contracts.[7] The Court determines that the amount in controversy is sufficient to meet the jurisdictional requirements of § 1331.

Jurisdiction is alternatively premised on the provisions of 28 U.S.C. § 1361, authorizing actions in the nature of mandamus to compel an official of the United States to perform a duty owed to the plaintiff. Plaintiffs' complaint here alleges that Secretary Romney has unlawfully deviated from his statutory duty by promulgating the regulations in question. Further, that the statute requires the Secretary to employ a different standard from that presently in use for reimbursement under 12 U.S. C. § 1735b(b). If the statute creates this standard, then plaintiffs are entitled to the mandamus they seek and jurisdiction is proper.

Defendants next contend that they owe no duty to these plaintiffs to properly inspect the homes plaintiffs purchased, citing United States v. Neustadt,[8] for this proposition. *Neustadt*, however, dealt with a claim arising under the Federal Tort Claims Act, while the present action is premised on specific reimbursement provisions recently added to the National Housing

---

3. Quarles v. Phillip Morris, Inc., 271 F. Supp. 842 (D.C.Va.1967); Pan Am. World Airways v. Boyd, 207 F.Supp. 152 (D.D.C.1962).

4. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

5. 12 U.S.C. § 1735b(c) (1971).

6. It appears unlikely to this Court that Congress intended to permit Secretary Romney to promulgate any regulations whatsoever, even to the extent of contravening Congressional intent, without being subject to judicial review.

7. Cf. Brown v. Southall Realty Corp., 237 A.2d 834, (D.C.App.1968); Javins v. First National Realty Co., 138 U.S.App. D.C. 369, 428 F.2d 1071 (1971).

8. 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

Act.[9] The clearly expressed intent of these provisions is to provide a remedy to home purchasers under the § 235 program for defects seriously affecting the use and livability of the homes that should have been disclosed upon inspection by FHA appraisers.[10] *Neustadt* held simply that there was no remedy under the Tort Claims Act for the complaint involved in that case.[11] Here, however, Congress has specifically recognized the abuses in the § 235 Program and provided· a remedy. Thus, defendants do have a duty to plaintiffs to properly inspect their homes prior to approval of the purchase.

■ The paramount question here on the motion for preliminary injunction is the likelihood of success on the merits. The burden on the plaintiff of showing his probable success is even greater where the preliminary relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after full litigation on the merits.[12] The grant of a preliminary injunction here will grant plaintiffs much of the ultimate relief sought. It is in this light that the Court views the question of probable success on the merits.

The existing home program established under § 235 was designed to enable low-income families to purchase existing homes with the assistance of mortgages approved and insured by the FHA. The program has been the subject of much notoriety and much abuse.[13] Recognizing that some of the abuses disclosed in Congressional hearings on the program had resulted from FHA approval of mortgages on patently substandard dwellings, Congress in 1970 amended the Housing Act to authorize the Secretary of Housing and Urban Development to

> make expenditures to correct, or to compensate the owner for structural or other defects which seriously affect the use and livability of any single-family dwelling which is covered by a mortgage insured under . . . (Section 235 of the National Housing Act) if . . . the defect is one that existed on the date of the issuance of the insurance commitment and is one that a proper inspection could reasonably be expected to disclose.[14]

Reimbursement to eligible homeowners under this provision is to be in accord with regulations promulgated by the Secretary.[15]

9. 12 U.S.C. § 1735b(b), Pub.L. 91–609, § 104, 84 Stat. 1771 (Dec. 31, 1970).

10. All too often, the FHA has viewed its role as a neutral middleman in a business transaction. As a government agency, the FHA has an obligation to ensure that purchasers of Section 235 homes are not misled into paying an exorbitant price or purchasing a seriously defective dwelling on the basis of the FHA appraised price and approval of subsidy payments.
Hearings on HUD Investigation of Low- and Moderate-Income Housing Programs Before the Committee on Banking and Currency, House of Representatives, 92nd Congress, 1st Sess., at 31. Cf. *Id.* at 11, 25.

11. The Supreme Court noted that Congress had not indicated any desire to modify the fundamental design of housing legislation from a· system of mortgage repayment insurance to one of guaranty or warranty to the purchasers of a home. Defendant

Romney finds comfort in this dicta. Yet the passage of the § 235 program brought the following response from the Secretary :
Mr. Chairman, let me make it perfectly clear, No. 1, the Congress enacted a huge new program here, one of a totally different character than this organization has been administering . . . and to change the organizational thinking of an organization that has been reviewing things from purely a credit standpoint to a consumer oriented organization which is required to administer this program successfully is an exceedingly difficult thing.
Hearings, note 10 *supra*, at 18.

12. Consumers Union of the U. S., Inc. v. Theodore Hamm Brewing Co., 314 F. Supp. 697, 699 (D.Conn.1970).

13. See generally, Hearings, note 10 *supra*.

14. 12 U.S.C. § 1735b(b) (1971).

15. 12 U.S.C. § 1735b(c) (1971) ; text accompanying note 5, *supra*.

The central issue here is the validity of the regulations established by Defendant Romney to implement the reimbursement provision quoted above. Those regulations [16] provide that in evaluating claims for reimbursement for alleged defects, the Secretary will consider:

(a) the extent to which the defects present a clear and present danger to the occupants; (b) the availability of funds from which the Secretary is authorized to make expenditures hereunder; and (c) such other matters as he deems material.[17]

Plaintiffs contend that "clear and present danger" standard set forth above is unduly restrictive and contravenes Congressional intent to provide reimbursement for defects which "seriously affect the use and livability" of the dwelling. The Court agrees with this position.

The language of the statute and the Congressional intent are clear. This is a remedial program designed to reimburse the victims of abuses discovered in the § 235 program. The Secretary is to prescribe by regulations the "terms and conditions" of payment, but he is without power to restrict a statutorily defined standard of eligibility. While the administrative interpretation of statutory provisions in the area of agency expertise is due great deference, such interpretation cannot prevail in the face of convincing statutory language and legislative history prescribing a different conclusion. This Court concludes that the "clear and present danger"

standard for reimbursement impermissibly excludes from eligibility for reimbursement certain defects which Congress had intended would be so eligible. The Court finds the clear and present danger test is not merely a permissible application or interpretation of the statutory language, but a fundamental restriction thereof. There may well be many housing defects which seriously affect the use and livability of a dwelling without constituting a clear and present danger to the occupants. Having concluded that the regulations prescribe an improper standard for the evaluation of defects, and considering the defects alleged here [18] and uncontroverted by the defendants, the Court is of the opinion that plaintiffs have a substantial likelihood of success on the merits.

In further consideration of the standards for issuance of a preliminary injunction,[19] the Court concludes that public policy favors the issuance of a preliminary injunction in this case to prevent continued application of a standard for reimbursement which contravenes Congressional intent. Plaintiffs' injury from continued occupancy of their defective dwellings during the pendency of this action when they seem likely to be eligible for reimbursement to have repairs made is immeasurable and irreparable. The Court finds no injury to the defendants, who will simply be required to revise and apply their regulations in accord with Congressional intent. In light of the above considerations, a preliminary injunction will issue prohibiting Defendant Romney from

16. 24 C.F.R. § 200.517 et seq.

17. 24 C.F.R. § 200.527.

18. Luke Bailey alleges the following defects: no heat, no hot water, ceiling collapsing, and holes in floors and walls permitting rodents into the home. Louise Tyler alleges the following defects: collapsed ceiling in pantry, sporadic hot water, crumbled porches, front door frame rotted such that door will not stand, collapsed railing on staircase, and holes in floor and walls permitting entry of rats. Catherine Tollar alleges the following de-

fects: leaking gas, broken steps, crumbling ceiling over steps, front door frame rotted. Samuel Johnson alleges the following defects: defective toilets, loose floorboards, basement floods after rains, missing light fixtures, fixtures with exposed wires, and leaking water pipes in kitchen. Plaintiffs Matilda Gross, James Shuler, and Estella Wilson all allege similar defects.

19. Virginia Petroleum Jobbers Assn. v. F. P. C., 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958).

applying the "clear and present danger" standard in evaluating defects for which reimbursement is claimed and directing application of the statutory standard, serious effect on the use or livability of the dwelling. Plaintiffs' applications for reimbursement will be remanded to the Secretary for evaluation in light of the appropriate standard.

Plaintiffs have contended that the statutory language "seriously affecting the use and livability" should be interpreted here as incorporating the standards of the local housing code into the reimbursement provisions of the National Housing Act, that this Court should direct reimbursement for all defects which are in violation of the local code.[20] The short answer to this contention is that this is not what the statute says. Congress could have written such a standard into law, but did not do so.[21] Congress could have written any standard it chose into the reimbursement provisions. It did not choose the restrictive "clear and present danger" standard, but neither did it choose the local housing code. It chose to employ a completely new standard, to reimburse for defects which seriously affect the use and livability of the dwelling. This standard will require evaluation of the facts of each case. While a per se standard such as the local housing code might be easier of application, it is not the standard which Congress chose and this Court is powerless to read it into the law. Further, there may well be localities where a weak housing code controls and where the standards here prescribed by Congress reaches defects which are not violations of the local code. It is tempting to provide an easy standard of interpretation for just what defects seriously affect the use and livability of a dwelling, but that is a primarily factual determination and its implementation in the first instance is for the Department of Housing and Urban Development.

Plaintiffs have requested that this action be certified as a class action under Rule 23(b)(3), Federal Rules of Civil Procedure. The request is denied. There are several considerations that may vary among those persons who are purchasers of homes under the § 235 program in the District of Columbia. First, not all homes had defects existing prior to or at the time of purchase. Second, determinations must be made in each instance as to whether the defects violate the statutory standard, and third, the damages will vary. The legal issues will be resolved here. The factual contentions of potential class members not joined in this suit may be resolved through regular agency channels pursuant to a proper interpretation of the reimbursement statute as directed herein.

Appropriate orders will be entered.

### On Motions for Reconsideration

This matter is before the Court on Motions of both Plaintiff and Defendant for Reconsideration of the Memorandum Opinion entered herein December 18, 1972. Plaintiffs raise two points in their motion: (1) a renewed request for certification as a class action and (2) an argument that failure of HUD to provide an adjudicatory hearing for determination of eligibility, for reimbursement for housing defect repairs under 12 U.S.C. § 1735b(b) is a violation of

---

**20.** The Court is informed that subsequent to the events herein and after the present motions were under advisement, HUD did alter the standards by which a home would initially be determined eligible for mortgage insurance under the § 235 program by including compliance with the local housing code as a condition. There is no indication, however, that the standard of reimbursement for defects discovered in a home previously insured has been changed from the clear and present danger standard.

**21.** That the standard of the local housing codes was available for incorporation into the reimbursement provisions was obviously known by Congress is indicated by the fact that other sections of the National Housing Act do incorporate by reference the provisions of local housing codes. See Hearings, note 10 supra, at 7.

due process. The Court does not find merit in either point.

 Under Rule 23(b)(3) the Court finds that questions of law common to the members of the class do not predominate over any questions affecting only individual members. Rather questions of fact relating to the individual class members, the nature of their separate claims and individual eligibility, predominate. A class action is thus inappropriate. With regard to Plaintiffs' due process contentions, the Court has discovered no authority, and Plaintiffs have offered none, which would require an adjudicatory hearing for the determination of claims for reimbursement or assistance for housing defects under the Section 235 program. HUD has established an administrative mechanism allowing ample opportunity for written presentation and documentation of claims, and appeal from an adverse initial determination. The one case arguably in point, Powelton Civic Home Owners Ass'n v. H. U. D., 284 F.Supp. 809 (E.D.Pa.1968), requires no more.

Defendants' Motion for Reconsideration also raises two points: (1) that HUD owes no "duty" of proper inspection to purchasers of Section 235 homes, and (2) that the Court misinterpreted HUD regulations, 24 C.F.R. § 200.527, in the initial Memorandum Opinion herein. The question of HUD's duty to inspect Section 235 homes was fully briefed and was decided by the Court in its Memorandum Opinion. The Court sees no reason to alter that decision. United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), is distinguisable and was distinguished. The reimbursement program for Section 235 homes created by 12 U.S.C. § 1735b(b) is *sui generis*. This Court held that under that program Congress had intended to create a duty on the part of HUD to properly inspect Section 235 homes. The duty extends only to homes insured under this program and is limited, of course, by the scope of the statutory reimbursement provisions which created the duty. The Court adheres to the views earlier expressed in its Memorandum Opinion.

On the question of interpretation of 24 C.F.R. § 200.527, the Court finds that the limitations which HUD would read into the regulations, as providing *only* for assignment of administrative or financial priorities, are nowhere present in the language of the regulation. § 200.522 does properly set forth the statutory standard for reimbursement. Yet § 200.537(a), which immediately follows § 200.522, reads on its face as a limitation upon the statutory standard for determination of which defects will be afforded reimbursement. Here also, the Court adheres to the views earlier expressed in its Memorandum Opinion.

There appearing to the Court no further issues of fact or law to be resolved in this case, the matters before the Court on Motion for Preliminary Injunction will be treated as consolidated with trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. Entry of an Order implementing the Memorandum Opinion herein was withheld pending submission and determination of the present motions. An appropriate final order of injunction will now be entered.

Ordered, that the pending Motions for Reconsideration be and hereby are denied.