**Mrs. Anna POLLARD, an Individual, Appellant,**

v.

**George W. ROMNEY, Individually, and in his capacity as Secretary of Housing and Urban Development, et al.**

**No. 74–1336.**

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1974.

Decided Feb. 24, 1975.

Frank I. Smizik, Neighborhood Legal Services Ass'n, Braddock, Pa., Michael A. Donadee, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellant.

Carla A. Hills, Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty., William Kanter, Anthony J. Steinmeyer, Attys., Dept. of Justice, Washington, D. C., for appellees.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents the question whether the federal courts have jurisdic-

tion to review a decision of the Secretary of Housing and Urban Development, fashioned under section 518 of the National Housing Act, denying funds for the repair of a dwelling that is subject to a mortgage guaranteed by HUD.

## A.

On November 27, 1970, Anna Pollard purchased a single-family residence in North Braddock, Pennsylvania. A note, secured by a mortgage on the premises, provided $9,200 of the $12,000 purchase price of that home. The mortgage was insured by HUD under the Existing-Home Program of section 235 of the National Housing Act.[1] As part of the benefits provided by that program Mrs. Pollard received from HUD a monthly subsidy of $43. to assist her in meeting the monthly mortgage installments of $74.15.

Mrs. Pollard claims that she was led to believe that prior to her purchasing the house representatives of HUD had inspected the dwelling and determined that it complied with all applicable health and building codes. However, as related by Mrs. Pollard, shortly after moving into the house in December, 1970, she began noticing latent defects affecting, *inter alia*, the plumbing, the heating system, the roof, and the electrical wiring. Within "one year after the insurance of the mortgage" by HUD, Mrs. Pollard claims she requested HUD to provide, pursuant to subsection 518(b) of the Housing Act,[2] financial assistance for making the necessary repairs. A month later a HUD inspector, having visited the residence while Mrs. Pollard was not present, apparently left a message which Mrs. Pollard never received.[3]

Mrs. Pollard's attorney wrote HUD on December 18, 1972, requesting another inspection. Then on January 29, 1973, Mrs. Pollard initiated this action in the district court. She asserted that HUD had failed to inspect the dwelling to determine whether it conformed to local health and housing codes, and had there-

1. National Housing Act § 235(b), 12 U.S.C. § 1715z(b) (1969 and Supp.1975).

2. Although subsequently amended, at the time Mrs. Pollard filed her claim with HUD, subsection 518(b) of the Housing Act, 12 U.S.C. § 1735b(b), 84 Stat. 1771, provided:

   (b) The Secretary is authorized to make expenditures to correct, or to compensate the owner for, structural or other defects which seriously affect the use and livability of any single-family dwelling which is covered by a mortgage insured under section 1715z of this title and is more than one year old on the date of the issuance of the insurance commitment, if (1) the owner requests assistance from the Secretary not later than one year after the insurance of the mortgage, . . . and (2) the defect is one that existed on the date of the issuance of the insurance commitment and is one that a proper inspection could reasonably be expected to disclose. The Secretary may require from the seller of any such dwelling an agreement to reimburse him for any payments made pursuant to this subsection with respect to such dwelling.
   On August 22, 1974, Congress amended the subsection to provide in pertinent part:
   (b) The Secretary is authorized to make expenditures to correct, or to reimburse the owner for the correction of, structural or other major defects which so seriously af-

fect use and livability as to create a serious danger to the life or safety of inhabitants of any one . . . family dwelling which is covered by a mortgage insured under section 1715z of this title . . . and which is more than one year old on the date of the issuance of the insurance commitment, if (1) the owner requests assistance from the Secretary not later than one year after the insurance of the mortgage, . . . and (2) the defect is one that existed on the date of the issuance of the insurance commitment and is one that a proper inspection could reasonably be expected to disclose. The Secretary may require from the seller of any such dwelling an agreement to reimburse him for any payments made pursuant to this subsection with respect to such dwelling. Expenditures pursuant to this subsection shall be the obligation of the Special Risk Insurance Fund.
12 U.S.C. § 1735b(b) (Supp.1975). The amendment is not material here in light of our disposition of this case.

3. The Secretary explained that although Mrs. Pollard was not home when the inspector visited the dwelling, two other persons who were present refused the inspector access to the building. The inspector, according to the Secretary, left a note requesting that Mrs. Pollard contact the HUD office, but Mrs. Pollard states she never received the message.

by not complied with the requirements of the section 235 Existing Home Program.[4] Mrs. Pollard further alleged that by refusing to repair the defects in her house, HUD violated section 518 of the Act, which provided for repair of defects seriously affecting use and livability, and also transgressed the regulations promulgated by the Secretary under that section. Following commencement of the suit, HUD again visited the Pollard home and this time inspected the alleged defects. HUD then informed counsel for Mrs. Pollard that it believed that lack of proper maintenance had contributed to the defective condition of the residence, but offered financial aid in correcting ten defects. Mrs. Pollard's counsel responded, requesting financial aid with respect to seventeen additional defects as well. There have apparently been no further attempts to settle amicably the dispute between HUD and Mrs. Pollard.

## B.

In the district court Mrs. Pollard sought (1) a declaratory judgment stating that HUD had a duty to ascertain that all housing insured under the section 235 Existing Home Program complied with the local health and housing codes; (2) a writ of mandamus ordering HUD to reimburse Mrs. Pollard for the cost of rehabilitating her house so that it might comply with the standards of the Allegheny County Health Department; (3) as an alternative to the writ of mandamus, damages in the amount necessary to bring her home into conformity with the County's standards; and (4) such other relief as the court deemed just and equitable.[5]

The Secretary filed a motion for judgment on the pleadings or, in the alternative, for summary judgment. Mrs. Pollard moved for partial summary judgment. The district court granted summary judgment for the Secretary.

## C.

On this appeal Mrs. Pollard claims that in denying her compensation for the expense necessary to bring her HUD-insured home into conformity with the local codes HUD violated the regulations[6] the agency itself has issued pursuant to subsection 518(b). Mrs. Pollard further contends that the district court erred in concluding that it had no jurisdiction to review the Secretary's decision regarding reimbursement authorized by section 518(b).

In her brief, Mrs. Pollard also had argued that the district court erred in concluding that she was not entitled to declaratory, injunctive, mandamus or damage relief because of HUD's failure, as required by § 235, to inspect her home to determine whether it complied with the local codes. However, in his letter of July 3, 1974, addressed to the Clerk of the Court, Mrs. Pollard's attorney "request[ed] that this Court limit its review to Appellant's claim for relief under 12 U.S.C. § 1735b. . . . Thus, as to Appellant Pollard's claim for relief review will be based on § 1735b, and any claims for relief primarily based on [section 221(d)(2) made applicable by section 235] are hereby withdrawn." Inasmuch as counsel for Mrs. Pollard has .eliminated all claims for relief based on section 235, we do not have before us the question whether the district court should

---

**4.** 12 U.S.C. § 1715z(i)(2) (Supp.1975) provides that to be eligible for mortgage insurance a single-family dwelling must conform to the requirements of 12 U.S.C. § 1715*l*(d)(2) (Supp.1975). The latter section stipulates that before mortgage insurance may be obtained the dwelling must comply with all local ordinances and regulations relating to zoning or public health safety. This Court decided in Davis v. Romney, 490 F.2d 1360, 1368, 1369 (1975) that section 1715*l*(d)(2) imposes on HUD, at the very least, an obligation

to "make reasonable efforts to ascertain" that homes utilized to *secure* insured mortgages meet local code standards.

**5.** Although Mrs. Pollard's complaint did not specifically request injunctive relief, she has asserted that the district court could properly have granted injunctive relief requiring the Secretary to put her home in compliance with the local codes.

**6.** 24 C.F.R. §§ 200.517–200.533.

have granted declaratory judgment under section 235, similar to that afforded in Davis v. Romney.[7]

In response to Mrs. Pollard's assertion that the district court erred in concluding that it had no jurisdiction to re-evaluate HUD's denial of her claims for compensation under subsection 518(b), the agency argues that judicial review of decisions pertaining to the disbursement of funds pursuant to section 518 is precluded by subsection 518(c).

### D.

In Abbott Laboratories v. Gardner[8] the Supreme Court articulated the precept governing judicial review of administrative actions:

> [J]udicial review of a final agency action by an aggrieved person will not be cut off *unless* there is persuasive reason to believe that such was the purpose of Congress. . . . [T]he Administrative Procedure Act . . embodies the basic presumption of judicial review to one " . . . adversely affected or aggrieved by agency action . . .," . . . *so long as* no statute precludes such relief or the action is not one committed by law to agency discretion, 5 U.S.C. § 701(a).[9]

The Supreme Court explicitly recognized in *Abbott Laboratories* that, although there is a presumption favoring judicial review, re-evaluation of the agency's decision is foreclosed where Congress has expressed an intent to preclude it. In Barlow v. Collins[10] the Court stated "Whether agency action is reviewable often poses difficult questions of congressional intent; and the Court must decide if Congress has in express or implied terms precluded judicial review or committed the challenged action entirely to administrative discretion."

■ Federal agencies should not be able to retreat behind the concept of no judicial review unless Congress has specifically authorized such a ban. However, where Congress has expressly provided that an agency's action is final and conclusive, the courts of appeals have applied the principle enunciated in *Abbott Laboratories* and *Barlow*, and have declared that the federal courts do not have jurisdiction to review a statutory challenge to an administrative decision on the distribution of benefits. For example, federal courts are not available, this Court decided in Hoffmaster v. Veterans Administration,[11] to hear challenges to determinations by the VA of claims for veterans' benefits. Congress had stipulated that "the decisions of the [Veterans'] Administrator on any question of law or fact concerning a claim for benefits or payments . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision."[12] In a per curiam opinion the Third Circuit concluded that "[a]ppellant's claims are directly under the above language" and therefore "[t]he trial judge had no alternative but to deny the motion for an injunction and dismiss the case for lack of jurisdiction."[13]

### E.

In this case then Mrs. Pollard is asking the federal courts to overrule the Secre-

---

7. In Davis v. Romney, 490 F.2d 1360 (1974), this Court held that the district court properly granted declaratory relief requiring that HUD, in the future, inspect houses for local code violations before insuring mortgages on such houses. The Court, however, decided that neither injunctive nor damage relief could be granted under section 235 to those who had already suffered injury as a result of HUD's failure to inspect their homes.

8. 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

9. *Id.* at 140–41, 87 S.Ct. at 1511 (emphasis added).

10. 397 U.S. 159, 165, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970).

11. 444 F.2d 192 (3d Cir. 1971).

12. 72 Stat. 1115 amended 38 U.S.C. § 211(a) (Supp.1975).

13. 444 F.2d at 193. *See also* deRodulfa v. United States, 149 U.S.App.D.C. 154, 461 F.2d 1240 (1970); *cf.* Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960).

tary's decision refusing to grant her financial assistance, or benefits, under subsection 518(b).[14] Subsection 518(c)[15] provides in pertinent part:

> The Secretary['s] . . . decisions regarding such expenditures or payments [made under the provisions of this section], and the terms and conditions under which the same are approved or disapproved, shall be final and conclusive and shall not be subject to judicial review.

■ Mrs. Pollard's claim for compensation for the cost of repairing her home is clearly a request for "expenditures or payments" under subsection 518(b), as those terms are used in subsection 518(c). Since Congress has declared that the decisions of the Secretary regarding such disbursements "shall be final and conclusive and shall not be subject to judicial review," the district court properly concluded that it did not have jurisdiction over Mrs. Pollard's requests for compensation under section 518.

■ The argument Mrs. Pollard presses on appeal is unlike that presented in Davis v. Romney.[16] There, this Court held that the district court was within its discretion in granting plaintiffs a declaratory judgment stating that HUD had a statutory duty under section 1715*l* (d)(2) to make reasonable efforts to ascertain that homes securing insured mortgages complied with local codes. *Davis*, however, unlike the present case,[17] did not involve any statute or provision which specifically limited the jurisdiction of the district court to grant the requested relief.[18]

Mrs. Pollard directs the Court's attention to the decision of the Northern District of Mississippi in Graham v. Caston.[19] But *Graham* is not an analogue. There, unlike here, the plaintiffs alleged that the section 235 housing program was being administered in a racially discriminatory manner. The Mississippi court concluded that it had jurisdiction to review at least the "terms and conditions" prescribed by the Secretary pursuant to section 518 and the alleged failure of the Secretary to follow his own regulations. It stated "that there are certain minimal terms and conditions the Secretary must prescribe and to which he must adhere in the administration of this program, and that the adequacy of such minimal terms and conditions is not precluded from judicial review by either the terms of § 1735b or the Administrative Procedure Act."[20] Since there is no allegation by Mrs. Pol-

14. It should be noted that the negotiations between HUD and Mrs. Pollard have been left at an inconclusive stage. If Mrs. Pollard was unable to agree with the director of the local HUD field office on appropriate compensation, review procedures were available within the agency. *See* HUD Handbook 4515.1, superseding HUD Circular HPMC–FHA 4441.-30B. At oral argument Mrs. Pollard's counsel conceded that such agency review procedures have not yet been employed here. There was no allegation either in the briefs or at oral argument that such review procedures are no longer available to resolve the disagreement between HUD and Mrs. Pollard regarding the proper amount of compensation.

15. 12 U.S.C. § 1735b(c) (Supp.1975).

16. 490 F.2d 1360 (3d Cir. 1974).

17. In the present case we need not deal with the question whether the district court could have granted a declaratory judgment stating that HUD, in determining whether a particular claimant should be awarded funds for repairing certain defects, is required to follow the guidelines set out in section 518 and the Secretary's regulations thereunder. *Compare* Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). Mrs. Pollard did not ask the district court for declaratory relief requiring the Secretary to comply with section 518 and the Secretary's regulations thereunder. The only declaratory relief prayed for in Mrs. Pollard's complaint related to HUD's failure to comply with section 235. Language in the briefs submitted to the Court to the effect that declaratory relief under section 518 should be available to Mrs. Pollard is not sufficient to remedy the absence of such a request in her complaint.

18. *Compare also* Shannon v. Department of Housing and Urban Development, 436 F.2d 809 (3d Cir. 1970); North City Area-Wide Council v. Romney, 428 F.2d 754 (3d Cir. 1970).

19. No. DC–73–23–K (N.D.Miss. filed May 22, 1974).

20. No. DC–73–23–K at 15–16.

lard of racially discriminatory implementation of the section 518 program, or any other violation of constitutional rights, we need not decide whether, under such circumstances, subsection 518(c) would preclude judicial review. On the facts of the case now before us, re-evaluation by this Court of Mrs. Pollard's request for home-repair funds would be contrary to the plain meaning of the words of the statute. Moreover, none of the cases on which the Mississippi court relied [21] involved statutes specifically stating that the agency action was final and conclusive and not subject to review by the courts.

On the other hand, in Bailey v. Romney,[22] the District Court for the District of Columbia concluded that Congress had intended that the Secretary's decision on claims for compensation under section 518 be conclusive. The plaintiffs in Bailey v. Romney challenged the legality of the regulations issued by the Secretary to implement the subsection 518(b) reimbursement program.[23] In denying a challenge to its jurisdiction to review the Secretary's regulations, the district court gave the following interpretation to subsection 518(c):

> The statute clearly makes the decision of the Secretary final upon applications for *reimbursement* under the promulgated regulations . . . .[24]

For the reasons stated above, we conclude that the district court did not have jurisdiction to entertain the claim for reimbursement asserted by Mrs. Pollard. Accordingly, the judgment of the district court will be affirmed.

---

**21.** Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Adams v. Richardson, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973); Environmental Defense Fund v. Corps of Engineers, 492 F.2d 1123 (5th Cir. 1974); Scanwell Laboratories v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

**22.** 359 F.Supp. 596 (D.D.C.1973).

**23.** Plaintiffs in *Bailey* contended that the then-existing regulations, which required the Secretary to consider "The extent to which the defects present a clear and present danger

to the occupants", were inconsistent with the statutory direction that reimbursement be made for defects "which 'seriously affect the use and livability'" of the residence. The regulations have subsequently been amended. *See* 24 C.F.R. §§ 200.517–200.533.

**24.** 359 F.Supp. at 599 (emphasis added). The court continued, stating "but [the statute] does not deny judicial review of the regulations themselves." [Footnote omitted] Since we are not presented with a challenge to the Secretary's regulations, we do not here decide whether the holding on this issue by the District of Columbia court was correct.