Ernestine OWENS, Charles and Kay Sussman, Robert and Vicki Rupp, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Clara HILLS, Individually and as Secretary of the United States Department of Housing and Urban Development, John L. Waner, Individually and as Director of the Chicago Area Office of the United States Department of Housing and Urban Development and United States Department of Housing and Urban Development, Defendants.

No. 76 C 2705.

United States District Court,
N. D. Illinois, E. D.

May 18, 1978.

Seymour Mansfield, William P. Wilen, Gordon G. Waldron, Eric Gershenson, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant complaint involves challenges by plaintiffs to the operation by the Department of Housing and Urban Development (HUD) of its construction complaint and structural defect program as authorized by the National Housing Act § 518(a), 12 U.S.C. § 1735b(a), *as amended*. Plaintiffs, who seek to have this cause certified as a class action, allege that the operation of the section 518(a) program violates their rights under the due process clause of the fifth amendment, the Administrative Procedure Act § 6, 5 U.S.C. § 555, the provisions of section 518(a) and section 801 of the National Housing Act, 12 U.S.C. §§ 1735b(a), 1701j–1, and HUD's own regulations as set forth in the Department of Housing and Urban Development Handbook No. 4070.1 (revised).[1] Presently before the court are: (1) plaintiffs' motion to certify a class pursuant to Fed.R.Civ.P. 23(b)(2); and (2) defendants' motion to dismiss or for summary judgment. After setting forth the nature of the section 518(a) structural defect compensation program and its implementation as delineated in HUD Handbook No. 4070.1 (revised), this court will consider the motions seriatum.[2]

## I.

The National Housing Act § 518(a) provides:

(a) The Secretary is authorized with respect to any property improved by a one- to four-family dwelling approved for mortgage insurance prior to the beginning of construction which he finds to have structural defects, to make expenditures for (1) correcting such defects, (2) paying the claims of the owner of the property arising from such defects, or (3) acquiring title to the property: *Provided,* that such authority of the Secretary shall exist only (A) if the owner has requested assistance from the Secretary not later than four years (or such shorter time as the Secretary may prescribe) after insurance of the mortgage, and (B) if the property is encumbered by a mortgage which is insured under this chapter after September 2, 1964.

.  .  .  .  .

(c) The Secretary shall by regulations prescribe the terms and conditions under which expenditures and payments may be made under the provisions of this section, and his decisions regarding such expenditures or payments, and the terms and conditions under which the same are approved or disproved, shall be final and conclusive and shall not be subject to judicial review.

12 U.S.C. § 1735b(a). Thus, section 518(a) establishes a program for the correction by HUD of structural defects found in certain newly constructed homes financed by the Federal Housing Authority (FHA) under the National Housing Act, 12 U.S.C. §§ 1701 *et seq.*

The section 518(a) claim procedure has two parts. When a request for financial assistance is received by HUD, a Complaint Officer initiates the Construction Complaint procedure. This procedure, which implements section 801 of the National Housing

---

1. Although not expressly stated in the complaint, this court has jurisdiction over the issues raised in the complaint pursuant to 28 U.S.C. § 1331. Plaintiffs are hereby ordered to amend the complaint to specifically allege subject matter jurisdiction under section 1331 in light of *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

2. Defendant Waner and HUD have moved to dismiss the complaint as to them. Defendant Waner's motion is denied since plaintiffs raise constitutional claims as to him in his official capacity. Defendant HUD's motion is granted since plaintiffs have properly named the Secretary of HUD as a defendant. 12 U.S.C. § 1702.

Act, 12 U.S.C. § 1701j–1,[3] requires the Complaint Officer to attempt to obtain from the builder correction of the justified items named in the owner's complaint. Several letters are sent to the builder seeking his assistance and if he fails to comply he is cut off from further participation in HUD/FHA programs. If the Complaint Officer fails to obtain voluntary compliance by the builder, the actual processing of the homeowner's section 518(a) claim is begun.[4] Pursuant to 24 C.F.R. § 200.507 it is mandatory that the Construction Complaint procedure is followed prior to the actual processing of a section 518(a) claim for assistance.

The next step in the processing of a structural defect claim is a review of the file for general eligibility requirements and the assigning of the complaint to an inspector. The inspector is to visit the property in question "as soon as possible" upon making an appointment with the homeowner. The purpose of the inspection is to determine the nature of the claimed defect, its causes and possible methods for its correction. The inspector is to make a recommendation as to whether or not the defect is "structural." Prior to September 3, 1976, the HUD Area Office Complaints Officer and the regional office forwarded to the Structural Defects Committee in Washington, D.C. the recommendation of the inspector for final decision on a section 518(a) claim. Now, however, the HUD Area Director makes the final decision based upon the inspector's recommendation and a review of the file. If the claim is denied, the Complaint Officer notifies the homeowner by letter explaining the reasons HUD cannot be of assistance.

3. Section 801 provides that owners of newly constructed one- to four-family FHA financed homes are to be provided by the builder with a one-year warranty covering, among other items, structural defects.

4. Prior handling of a section 518(a) claim as a Construction Complaint can be omitted by the Complaint Officer if it is apparent that the builder is unwilling or unable to correct the structural defects, i. e., the builder is bankrupt.

5. Defendants' contention that plaintiff Owens cannot be a class representative because she has already received section 518(a) benefits

## II.

Plaintiffs presently move to certify a class consisting of:

All owners of one- to four-family dwellings within the jurisdiction of the Chicago Area Office of HUD (CAO); the mortgages on which dwellings had been approved for HUD/FHA mortgage insurance prior to the beginning of construction and which had been insured by HUD/FHA after September 2, 1964, who, not later than four years after insurance of the mortgage on their dwelling, (a) have filed or may file claims for financial assistance under Section 518(a) of the National Housing Act with CAO, or (b) have filed or may file "construction complaints" or have otherwise complained or may complain to CAO about defects in their dwellings.

While this court believes that class certification in this cause is appropriate pursuant to Fed.R.Civ.P. 23(b)(2), the class defined by plaintiffs is too broad.

First, this court finds that plaintiffs have established the four requirements for class certification under rule 23(a) and the requirement for certification under rule 23(b)(2). The class is so numerous as to make joinder impracticable. There are common questions of law and fact concerning the constitutionality of defendants' section 518(a) procedures as well as common fact questions as to defendant CAO's *policy* not to following its own procedures. Plaintiffs' claims are typical of the class they seek to represent and they will adequately and fairly protect the class' interests.[5] Fi-

from HUD is without merit. HUD granted Ms. Owens the benefits after this action was filed and the "mooting out" of Ms. Owens' individual claim by the voluntary acts of the defendants does not make class certification inappropriate. *See Langson v. Simon,* 74 F.R.D. 456 (N.D.Ill. 1977). Moreover, the fact that several other individual plaintiffs did not follow all of HUD's section 518(a) procedures before joining in this action does not bar them from representing the class of persons who have "other wise complained" to HUD about defects in their dwellings.

nally, injunctive relief is sought in this cause since defendants' allegedly have acted or refused to act on grounds generally applicable to the class.

However, pursuant to the decision in *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), plaintiffs may not represent any "future" claimants for section 518(a) benefits. Accordingly, with the deletion of the words "may file" and "may complain" from plaintiffs' class definition, plaintiffs' motion for class certification is granted.

### III.

Defendants have moved to dismiss or for summary judgment on the five claims raised in plaintiffs' complaint. As to each claim plaintiffs argue that their allegations state a claim for relief and that genuine issues of fact exist which preclude summary disposition of this cause.

### A.

■ Plaintiffs' first claim for relief is based upon their contention that defendants have violated the statutory mandate of the National Housing Act § 518(a), 12 U.S.C. § 1735b(a) by making the Construction Complaint procedure an element of the structural defect eligibility process. It is argued that section 518(a) nowhere provides for resort to the builder prior to a consideration for section 518(a) reimbursement by HUD and that defendants cannot make exhaustion of the Construction Complaint procedure a prerequisite to section 518(a) eligibility. Plaintiffs contend that pursuant to section 518(a), defendants must reimburse those eligible for structural defect compensation and then HUD, itself, should seek relief from the builder.

This court must agree with defendants that this claim is without merit. Initially it should be noted that this court's review of HUD's regulations concerning the incorpo-

ration of the Construction Complaint procedure into section 518(a) eligibility determinations is limited. Thus, the Supreme Court has stated that while a presumption exists for judicial review of agency action, such agency action can be insulated from review when the statute establishing the administrative program precludes such review either expressly or by implication from the statutory scheme. *Morris v. Gressette,* 432 U.S. 491, 500–01, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977). In the case at bar, section 518(c), 12 U.S.C. § 1735b(c), provides, as stated previously:

(c) The Secretary shall by regulations prescribe the terms and conditions under which expenditures and payments may be made under the provisions of this section, *and his decisions regarding such expenditures or payments, and the terms and conditions under which the same are approved or disapproved, shall be final and conclusive and shall not be subject to judicial review.*

From this language it is clear that Congress intended to bar judicial review of agency decisions concerning the granting or denying of benefits under section 518(a) and those regulations established by the Secretary of HUD implementing section 518(a).[6]

■ However, the bar to judicial review of HUD's actions in relation to the section 518(a) structural defect program as delineated in section 518(c) does not foreclose all review of HUD regulations promulgated pursuant to section 518(a) authority. Concepts of "separation of powers" and "unlawful delegation of legislative power" mandate judicial review of certain agency action even in the face of a judicial review preclusion statute to insure that an agency has not clearly violated its statutory authority. *Graham v. Caston,* 568 F.2d 1092, 1097 (5th Cir. 1978), citing *Breen v. Selective Service Bd.,* 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). *See also Manges v.*

---

**6.** The legislative history of section 518(c) is quite scarce and does not indicate the breadth of the judicial review preclusion. However, there is some indication that the bar to judicial review was to be broadly construed. *See*

Housing Legislation of 1964, Hearings on S. 2468 Before the Subcomm. on Banking and Currency, 88th Cong., 2d Sess. 371 (1964) (statement of Robert C. Weaver).

*Camp,* 474 F.2d 97, 99–101 (5th Cir. 1973); *Amalgamated Meat Cutters & Butcher Work. v. Connally,* 337 F.Supp. 737, 759–62 (D.D.C.1971) (3-judge court).[7]

In the case at bar, the court must agree with defendants' that incorporation of the Construction Complaint procedure does not clearly violate the intent and purpose of section 518(a). First, while plaintiffs argue that section 518(a) does not specifically require initial resort to the builder before a structural defect claim is paid by HUD/FHA, section 518(a) does not specifically preclude such recourse. Second, the fact that the Construction Complaint procedure was initially employed to enforce section 801 warranty provisions,[8] which only provide one-year coverage, is irrelevant to HUD's authority pursuant to section 518(a) to seek voluntary compliance from the builder even after any legal remedies are foreclosed. Third, the legislative history is completely consistent in recognizing the propriety of HUD's use of voluntary compliance to correct structural defects in FHA insured dwellings. Thus, the Conference Report on the statute stated that FHA was authorized to "correct substantial defects in homes built under FHA inspection *if the builder does not provide relief."* H.R.Rep. No. 1828, 88th Cong., 2d Sess. 44 (1964) (emphasis supplied). Moreover, section 518(a) was viewed as a "last resort" remedy for structural defects. Housing Legislation of 1964, Hearings in S. 2468 Before the Subcomm. on Banking and Currency, 88th Cong., 2d Sess. 371 (1964) (statement of Robert C. Weaver). *See also id.* at 453–56, 860, 866, 1007, 1087, 1103; Housing and Community Development Legislation, Hearings on H.R. 9751 Before the Subcomm. on Housing of the Comm. on Banking and Currency, 88th Cong., 2d Sess. 51, 688 (1964); S.Rep. No. 1265, 88th Cong., 2d Sess. 63 (1964); 110 Cong.Rec. 17584, 17608 (1964). The use by HUD/FHA of the Construction Complaint procedure to obtain correction of substantial defects before section 518(a) funds are provided is a reasonable attempt to save limited budgeted funds and is clearly consistent with the statutes' primary purpose of correcting housing deficiencies.

Accordingly, as a matter of law, there being no genuine issue of fact, summary judgment is entered on behalf of defendants on claim 1 of plaintiffs' complaint.

### B.

■ Plaintiffs' second claim is based upon their contention that the procedures delineated in HUD Handbook No. 4070.1 (revised) for processing homeowners' claims for section 518(a) benefits deny plaintiffs

---

7. This court has found three cases interpreting the scope of section 518(c) as it relates to the preclusion of judicial review of agency decisions under section 518(b), the provision of the National Housing Act which provides compensation for defects found in existing housing financed by FHA loans. The results in these cases confirm the conclusion that a limited judicial review of HUD regulations implementing section 518(a) is available even in light of section 518(c). In *Graham v. Caston,* 568 F.2d 1092 (5th Cir. 1978), the court held that judicial review of HUD's alleged failure to comply with its own regulations was not precluded by section 518(c). The Third Circuit in *Pollard v. Romney,* 512 F.2d 295 (3d Cir. 1975), held that section 518(c) is a valid preclusion of judicial review over HUD's decision to deny compensation under section 518(b). Finally, in *Bailey v. Romney,* 359 F.Supp. 596 (D.D.C.1972), the court held that judicial review of HUD's regulation defining "structural defect" for purposes of section 518(b) compensation is available even in light of section 518(c). While the court cannot agree with the ruling in *Bailey* that section 518(c) does not apply to HUD regulations, the result in *Bailey* is correct. Thus, in *Bailey* the court sustained a challenge to HUD's regulation defining "structural defect" stating that the agency's standard violated the standard defined by Congress and that:

> It appears unlikely to this Court that Congress intended to permit [HUD] to promulgate any regulations whatsoever, even to the extent of contravening Congressional intent, without being subject to judicial review.

*Id.* at 599 n.6. Allowing an agency to define its own standards, of course, would violate fundamental principles of nondelegation of legislative power to the executive, *see Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed.2d 834 (1944); *United States v. Roya,* 574 F.2d 386 (7th Cir. April 14, 1978), and judicial review of such extra-statutory administrative action cannot be foreclosed.

8. *See* note 3 and accompanying text *supra.*

and the class they represent due process of law under the fifth amendment.[9] Plaintiffs contend that they have a legitimate "property interest" in receiving section 518(a) benefits and that this property right may not be taken from them without a prior oral hearing, access by claimants to their files, assistance of counsel, and the reasons for any denial of benefits. Defendants respond that section 518(a) does not create a property interest which requires due process procedures and that the procedures established by defendants satisfy any due process requirements.

While this court has serious doubts as to whether Congress in enacting section 518(a) granted homeowners a "legitimate claim of entitlement" requiring the observance by defendants of due process procedures prior to a denial of structural defect compensation, *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972),[10] in the case at bar the procedures employed by defendants meet minimal due process requirements. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Thus, the procedures delineated in HUD Handbook 4070.1 (revised) allow a homeowner to submit any materials relative to a structural defect claim and to check his or her file. HUD

Handbook ch. 1, § 2, ¶ 1–5a, b. Moreover, HUD is required to state the reasons for any denial of benefits. *Id.* at ch. 2, ¶ 2–10a. The HUD regulations and procedures do not prevent an attorney from assisting a claimant in preparing or presenting any documentations. The only procedure desired by plaintiffs not provided by HUD is an *oral* adjudicative hearing. But, in light of the objective factual determination required by defendants as to whether a structural defect exists, such an oral hearing is not mandated by due process. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The other district courts considering this issue have reached similar results. *Bailey v. Romney,* 359 F.Supp. 596, 603 (D.D.C.1972); *Metropolitan Area Housing Alliance v. Harris,* No. 76 C 992, Slip Op. at 15 (N.D.Ill. May 31, 1977).

Therefore, HUD's procedures comply with minimal due process requirements on their face and, as a matter of law, summary judgment is entered on behalf of defendants on claim 2 of plaintiffs' complaint.[11]

### C.

■ Plaintiffs' fourth and fifth claims assert that defendants are not, in fact, complying with their own regulations in admin-

9. It is clear that section 518(c) does not bar review of plaintiffs' constitutional challenge to HUD's section 518(a)'s implementing regulations. *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

10. Thus, the language of section 518(a) employs "discretionary" terms, such as "authorized," to delineate the scope of the Secretary of HUD's duty to aid homeowners with structural defects in their dwellings. The regulations issued by HUD state that homeowners are not entitled as a matter of right to section 518(a) benefits. 24 C.F.R. § 200.515 (1977). The legislative history does not support a finding that Congress intended HUD/FHA to be an insurer against structural defects in new homes financed by FHA. *See* S.Rep. No. 1265, 88th Cong., 2d Sess. 5–6 (1964); Housing and Community Development Legislation, Hearings on H.R. 9751 before the Subcomm. on Housing of the Committee on Banking and Currency, 88th Cong., 2d Sess. 51–52, 119, 235, 362, 676, 688, 840 (1964). Thus, the chief proponent of the bill indicated that the bill's supporters viewed this structural defect compensation authority

as increasing FHA's arsenal in administering its *mortgage* insurance program rather than establishing a federal structural defect warranty. *Id.* at 51. *But see* 110 Cong.Rec. 17586–87 (1964) (remarks of Senator Gruening). Finally, section 518(e) specifically asks the Secretary of HUD to file a report stating the need for a national structural defect warranty provided by FHA. 12 U.S.C. § 1735b(e). This report requirement is a strong indication that Congress in enacting section 518(a) had not already given homeowners with structural defects a "right" to such compensation.

11. Claim 3 of plaintiffs' complaint contends that pursuant to the Administrative Procedure Act, 5 U.S.C. § 555(b), plaintiffs are entitled to an oral hearing prior to denial of section 518(a) benefits. No cases are cited to support this proposition and the claim is without merit. *See, e. g., de Vyver v. Warden, United States Penitentiary,* 388 F.Supp. 1213, 1222 (M.D.Pa. 1974); *Slay Trans. Co. v. United States,* 353 F.Supp. 555, 558 (E.D.Mo.1973).

istering their section 518(a) program. Such claims are not precluded from review under section 518(a), *Graham v. Caston,* 568 F.2d 1092, 1097 (5th Cir. 1978). However, since there exist numerous issues of fact as to these claims which will require substantial discovery, defendants' motion for summary judgment cannot be granted.

### IV.

Accordingly, plaintiffs' motion for class certification is granted, as modified. Defendants' motion to dismiss or for summary judgment is granted as to claims 1, 2 and 3 of plaintiffs' complaint and is denied as to claims 4 and 5.

It is so ordered.