ALASKA AIRLINES, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,
Wien Alaska Airlines, Inc., Northern Consolidated Airlines, Inc., Intervenors.

No. 15001.

United States Court of Appeals
District of Columbia Circuit.

Argued May 11, 1960.

Decided July 8, 1960.

Mr. James F. Bell, Washington, D. C., with whom Messrs. George C. Neal and Calvin Davison, Washington, D. C., were on the brief, for petitioner.

Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Bd., with whom Mr. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Bd., Mr. John H. Wanner, Deputy Gen. Counsel, Civil Aeronautics Bd., Mr. Ulrich V. Hoffmann, Atty., Civil Aeronautics Bd., and Mr. Richard A. Solomon, Atty., Dept. of Justice, were on the brief, for respondent.

Mr. William C. Burt, Washington, D. C., entered an appearance for intervenor Wien Alaska Airlines, Inc.

Messrs. James L. Highsaw, Jr., Theodore I. Seamon and Joseph D. Sullivan, Washington, D. C., entered appearances for intervenor Northern Consolidated Airlines, Inc.

Before PRETTYMAN, Chief Judge, and DANAHER and BURGER, Circuit Judges.

PRETTYMAN, Chief Judge.

Petitioner, Alaska Airlines, Inc., was a certificated air carrier authorized to operate within the State of Alaska and between Fairbanks and Seattle-Portland. The latter certificate is not here involved. The Civil Aeronautics Board ordered that an amended certificate be issued for the former operation. Those orders are the subject of this petition for review.

The former certificate for service in Alaska made Alaska Airlines what it describes as a combination trunkline and bush operator. It authorized transportation over sixteen regular route segments. The main route was Fairbanks-Anchorage-Nome-Kotzebue via certain intermediate stops. This was a long-distance operation, a trunkline. The other route segments were numerous feeder routes, serving many small communities with small "bush" aircraft. The new certificate, issued by the Board after an investigation into the whole intra-Alaska air transportation situation, left with Alaska Airlines authority over the trunkline routes but did not give it authority over the feeder routes. It gave the latter to other, smaller carriers.

The statute gives the Board authority to "alter, amend, modify, or suspend" a certificate, if the public convenience and necessity so require. It gives the Board authority to revoke only for intentional failure to comply with a statutory provision, or with a rule, regulation or order, or with a condition in the certificate.[1]

Alaska Airlines says the action of the Board was a revocation of its certificate and, not being based on an intentional violation, was illegal. The Board says its action was a modification of the certificate and, being required by the public convenience and necessity, was legal.

Alaska Airlines says a basic transformation of the certificate itself, i. e., the routes, miles and points, is a revocation. In the present case the order of the Board resulted in a reduction in route miles from 3,947 to 993, a deletion of 2,954 route miles; and reduced the communities served from eighty-three to nine. It changed the operation under the certificate from a combination trunk and feeder service to a trunk service alone. These changes, says Alaska Airlines, are a basic transformation of the certificate.

The Board says the impact of a certificate alteration is measured in terms of overall system operations, that current economic factors must be considered, and that this latter consideration is a requirement of the public convenience and necessity. It says that the basic transformation concept includes economic considerations. The change made in the present case reduced Alaska Airlines' operating expenses 15.8 per cent, overall revenue 7.4 per cent, and revenue ton-miles (volume of traffic) only 2.2 per cent, although revenue plane-miles (miles actually flown) were reduced 16 per cent.[2] The basic nature of the operation

---

1. The full text of Section 401(g) of the statute (Federal Aviation Act of 1958), 72 Stat. 756, 49 U.S.C.A. § 1371(g), is: "The Board upon petition or complaint or upon its own initiative, after notice and hearings, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require, or may revoke any such certificate, in whole or in part, for intentional failure to comply with any provision of this title or any order, rule, or regulation issued hereunder or any term, condition, or limitation of such certificate: *Provided*, That no such certificate shall be revoked unless the holder thereof fails to comply, within a rea-

sonable time to be fixed by the Board, with an order of the Board commanding obedience to the provision, or to the order (other than an order issued in accordance with this proviso), rule, regulation, term, condition, or limitation found by the Board to have been violated. Any interested person may file with the Board a protest or memorandum in support of or in opposition to the alteration, amendment, modification, suspension, or revocation of the certificate."

2. Petitioners in their brief here assume for the purposes of their case the correctness of the findings of fact by the Board.

of Alaska Airlines, says the Board, was that of a trunkline carrier from Seattle-Portland to the principal cities in Alaska, and, it says, that basic nature was not transformed.

It seems clear enough that the requirements of the public interest are dominant in the statutory plan for modification or amendment of air certificates. It seems also clear that a realistic view of the public interest in an air carrier operation must include economic effects. It would be unrealistic, we think, to hold that the public interest is concerned only with route miles and points served. These are important factors, of course, but so also, it seems to us, are the overall economic factors of revenue, expense, and volume of traffic. The Board's action here did not materially alter these latter factors; indeed it bettered the net revenue prospects. And it is clear, as the Board claims, that Alaska Airlines' major objective in the development of its system has been "facilitating integrated single-carrier States-Alaska service to points beyond its Fairbanks gateway". After the change in its certificate it was left as the major intra-Alaska carrier, a States-Alaska carrier serving the principal cities in that State.

The Board recited that its objectives in making these certificate modifications were to facilitate a reduction in the subsidy requirements of Alaskan air service and the provision of improved services. It pointed out that the changes would reduce Alaska Airlines' break-even need by 33½ per cent. It would no longer be required to maintain small aircraft but could give its full attention to its economically more important trunk operations. The Board pointed out that the smaller carriers to which it was assigning the bush operations had much less indirect costs and could also achieve additional cost savings from increased utilization of their equipment and facilities. The Board concluded that the route segments serving the small communities would receive improved service at less cost to the Government if operated by the smaller carriers.

We agree that substantial reductions in subsidies are a material factor in the public convenience and necessity, so long as the operating service is not impaired. So long as the total service provided to the area remains undiminished in quality, and a fortiori if it is improved, substantial subsidy reductions are not only a material but a major factor in the public convenience and necessity.

We think, further, that the designation by the Congress of public convenience and necessity as the criterion for modification or amendment of a certificate is an indication of the purpose and scope of the power to modify or amend. The Board is authorized to issue a certificate when the public convenience and necessity so require.[3] Having an application before it, the Board issues the certificate upon such terms, i. e., routes, points, etc., as the public convenience and necessity require.[4] Thus the latter phrase serves as a bestowal of power. In the section relating to modifications [5] Congress specifically provided that the Board "upon its own initiative" may alter, etc., "if the public convenience and necessity so require". The use of the same phraseology in this section points to the conclusion that Congress meant by the latter provisions (Sec. 401(g)) to bestow power to amend or modify when the public convenience and necessity require. This interpretation is consistent with the declared policy of the Act, which is to authorize the Board to encourage and develop a national air transportation system adapted to the present and future needs of the commerce of the United States and of national defense.[6]

3. Sec. 401(d) of the statute, 72 Stat. 755 (1958), 49 U.S.C.A. § 1371(d).

4. Civil Aeronautics Board v. State Airlines, 338 U.S. 572, 70 S.Ct. 379, 94 L. Ed. 353 (1950).

5. Supra note 1.

6. Sec. 102 of the Act, 72 Stat. 740 (1958), 49 U.S.C.A. § 1302.

We agree with the views expressed by the Board, and its order will be affirmed.

Both petitioner and the Board argue to us that their respective positions are supported by the Board's leading case decision in the Panagra Terminal Investigation.[7] We think for present purposes we need not attempt to evaluate that opinion or determine its precise meanings.

We are of opinion that the fact that the Board, as part of its readjustment of the intra-Alaska air service pattern, assigned to other carriers the feeder routes formerly assigned to Alaska Airlines, is immaterial to the validity of the order which amended that carrier's certificate.

Affirmed.

Fahy, Circuit Judge, dissented.