**PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff,**

v.

Alan S. BOYD, Robert T. Murphy, Whitney Gilliland, Chan Gurney, G. Joseph Minetti, as individuals, and as members of the Civil Aeronautics Board, Defendants,

and

Alaska Airlines, Inc., Defendant-Intervenor.
Civ. A. No. 1236–62.

United States District Court
District of Columbia.
July 16, 1962.

William E. Miller, Washington, D. C., for plaintiff.

David C. Acheson, U. S. Atty., Joseph M. Hannon and Frank Q. Nebeker, Asst. U. S. Attys., Washington, D. C., for defendants.

James F. Bell, Washington, D. C., for defendant-intervenor.

HOLTZOFF, District Judge.

This action is brought by Pan American World Airways, Inc., an air carrier, against the members of the Civil Aeronautics Board, for a declaratory judgment adjudicating that the Board lacks authority to terminate a certificate of public convenience and necessity, which authorized the plaintiff to engage in air transportation between Seattle, Washington, and Fairbanks, Alaska. The plaintiff also seeks an injunction restraining

the defendants from terminating this certificate and from proceeding with an investigation for that purpose. The matter is before the Court on cross-motions for summary judgment.[1]

There are four air carriers operating between Seattle, Washington and Alaska. One of them is the plaintiff, Pan American World Airways, Inc., which has been conducting air transportation between these places since August, 1938. A single certificate was issued to it by the Civil Aeronautics Board covering this route on July 31, 1946, the certificate being numbered, FAM–20. The route runs through Canada, with an intermediate stop at Whitehorse. The other three carriers on similar routes are Northwest Airlines, Inc., which started its operations in 1946; Alaska Airlines, Inc., which commenced its activities in 1951; and Pacific Northern Air Lines, Inc., which also entered the field in 1951.

On March 19, 1962, the Civil Aeronautics Board issued an order instituting an investigation to determine whether public convenience and necessity required, and the Board should order, an alteration, amendment, modification, suspension, termination, or renewal, in whole or in part, of the four certificates just mentioned, "in accordance with the tentative conclusions set forth in the attached study". The ordering provisions of this document are preceded by detailed recitals and by what amount to findings of fact, conclusions of law, and an opinion. It is stated that the Board, as a result of an attached study, has reached "tentative conclusions". These conclusions are that the best route structure would be either a two-carrier or a three-carrier system, instead of the existing four-carrier system. It is set forth that the plaintiff's Alaska air service would be terminated, except at Fairbanks, which would be suspended until

60 days "after the Board's decision in the 'Reopened Transpacific Route case'." It is further stated that the Board tentatively concluded that the route modifications summarized in the three-carrier proposal were required. It is also pointed out that Pan American is no longer receiving a subsidy from the Government, while each of the other three carriers is in receipt of such a subvention. It is indicated that if the Pan American service were eliminated, the financial position of the other three carriers might be so strengthened as to obviate any necessity for further aid to them. In other words, the one air carrier on this route that is strong financially, would be excluded entirely in order to help its weaker competitors and thereby relieve the Government of the burden of partially supporting them. It seems strange to penalize the strongest air carrier in order to build up its rivals who seem to be in need of assistance. The Board made an *ex parte* decision *in camera*, and then set hearings, giving an opportunity to the affected parties to show cause why the decision should not be carried into effect.

While the motives of the members of the Board are, of course, not in question and their good intentions are undoubted, nevertheless, this procedure seems unique and curious. One cannot conceive a judicial tribunal first tentatively deciding a case *in camera ex parte*, and then trying it, putting the burden of proof on the parties who disagree with the tentative decision. Such a course seems contrary to the basic traditions of the common law and the fundamental concepts of our jurisprudence. While the administrative process, which is a recent but necessary development in the Anglo-American system of law, differs in many respects from the judicial process, nevertheless, the indispensable principle that

---

1. The defendants originally filed a motion to dismiss the complaint. At the conclusion of the oral argument on this motion, counsel for the defendants requested that it be treated as a motion for summary judgment as well. Thereupon, counsel for the plaintiff requested an opportunity to file a cross-motion for summary judgment. This request was granted and the matter was then continued for further oral argument on the expanded issues.

a case must not be prejudged by the tribunal that is going to hear and decide it, must of necessity govern both.

During the interval between the first and second argument on the pending motions, the Board on July 11, 1962 amended its original order by attempting to eliminate the word "termination" but, nevertheless, repeated its directions for an investigation in order to accomplish the same result, "in accordance with the tentative conclusions set forth in the attached study". The "tentative conclusions" remained unchanged. Consequently, the second order of the Board has not materially changed the issues of the proceeding.

The plaintiff brought this action for a declaratory judgment and injunctive relief, claiming that the Board lacked legal power to terminate the plaintiff's certificate. The defendant moved to dismiss the complaint on the ground that the action was premature, in that the plaintiff had failed to exhaust its administrative remedies. By changing its motion to one for summary judgment, the Government expanded its contentions to include an assertion that on the merits the Board had the power to do what it proposed to accomplish, namely, to eliminate the plaintiff as an air carrier on the route between Seattle, Washington and Fairbanks, Alaska. Leave to intervene as a party defendant has been granted to Alaska Airlines, Inc.

■■ This brings us to a consideration of the pertinent statutory provisions. An air carrier, being regarded as a public utility, may engage in air transportation only on the basis of a certificate of public convenience and necessity issued by the Civil Aeronautics Board, 49 U.S.C.A. § 1371. Such a certificate is analogous to a franchise. The Congress reserved to the Board a limited degree of control over it. Provisions to this effect are found in 49 U.S.C.A. § 1371(g):

"(g) The Board upon petition or complaint or upon its own initiative, after notice and hearings, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require, or may revoke any such certificate, in whole or in part, for intentional failure to comply with any provision of this subchapter or any order, rule, or regulation issued hereunder or any term, condition, or limitation of such certificate: *Provided,* That no such certificate shall be revoked unless the holder thereof fails to comply, within a reasonable time to be fixed by the Board, with an order of the Board commanding obedience to the provision, or to the order (other than an order issued in accordance with this proviso), rule, regulation, term, condition, or limitation found by the Board to have been violated. Any interested person may file with the Board a protest or memorandum in support of or in opposition to the alteration, amendment, modification, suspension, or revocation of the certificate."

Analyzing this section, we find that authority of two types is conferred on the Board over certificates, with certain restrictions and limitations in each instance. First, the Board may, after notice and hearing, alter, amend, modify, or suspend any certificate, in whole or in part, if the public convenience and necessity so require. Second, the Board, after notice and hearing, may revoke any certificate, in whole or in part, for intentional failure to comply with the law or with any order, rule or regulation issued thereunder, or any term, condition, or limitation of the certificate. The revocation must be preceded by an order of the Board commanding obedience to the provision, order, rule, regulation, term, condition, or limitation found to have been violated. Thus, while the Board may alter, amend, modify, or suspend a certificate on grounds of public convenience and necessity, it may not revoke any certificate except on charges and then only after an opportunity is granted to cure the violations found as the basis for the charges. There is no authority to termi-

nate, cancel, or in any other way, to deprive the carrier of a certificate. It is clear that this omission is not an inadvertence. A certificate of public convenience and necessity, like any other franchise, is valuable property and should not be lightly dealt with, once the certificate holder starts operations, which necessarily involve a considerable investment of funds and create employment. It is obvious that the Congress intended to limit and restrict the power of the administrative agency to deprive an air carrier of its route.

That the statutory limitations were intentional, is demonstrated by the provision dealing with foreign air carriers, 49 U.S.C.A. § 1372(f). The Board was expressly authorized by the Congress to alter, modify, amend, suspend, cancel or revoke a permit issued to a foreign air carrier, whenever it found such action to be in the public interest. In other words, while a permit issued to a foreign air carrier may be cancelled or revoked by the Board in the public interest, a certificate of a domestic air carrier may be revoked only on charges.

The authorities on this point are few, but they clearly sustain this interpretation of the statute.

In Alaska Airlines, Inc. v. C. A. B., 109 U.S.App.D.C. 230, 231, 285 F.2d 672, 673, the Court of Appeals for the District of Columbia Circuit expressly recognized the difference between the power of the Board to alter, amend, modify, or suspend a certificate on the one hand, and to revoke it on the other. In this point the Court made the following statement:

"The statute gives the Board authority to 'alter, amend, modify, or suspend' a certificate, if the public convenience and necessity so require. It gives the Board authority to revoke only for intentional failure to comply with a statutory provision, or with a rule, regulation or order, or with a condition in the certificate."

In United Air Lines, v. C. A. B., 198 F.2d 100, the Court of Appeals for the Seventh Circuit, likewise explicitly distinguished the broad power of the Board to amend, modify, or suspend a certificate, from the limited authority to revoke it only on charges. This subject was discussed as follows (pp. 105, 106):

"Under this section of the statute two separate areas are defined wherein the Board has authority to act with reference to existing certificates. One area involves revocation of certificates for violations of the Act or Board regulations or orders, and the other involves alterations, amendments, modifications or suspensions of existing certificates, in whole or in part, where the public convenience and necessity so require.

\* \* \* \* \* \*

"The terms, 'alter,' 'amend,' and 'modify' do connote some limitation. In the larger aspect any changes ordered under the Board's authority to alter, amend, and modify must be partial and not total. Further, the Board cannot be permitted to do piece-meal or step-by-step that which it has not power to accomplish in one proceeding."

The Court emphatically added (p. 108):

"We agree that the power of the Board to 'suspend' does not include the power to 'revoke.' Had Congress intended to grant the power to revoke, other than as set forth in Sec. 401(h) for the violation of orders and regulations, it could have said so exactly as it did in Sec. 402 (a) in referring to foreign air carrier permits."

The Supreme Court has emphasized the fact that Congress intended to surround the power to cancel a certificate with well defined restrictions, in order that an air carrier might invest money and build up an organization with a feeling of security. While C. A. B. v. Delta Air Lines, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 involved a question different from that presented here, nevertheless, some expressions of Mr. Chief Justice

Warren in that case are significant in connection with the present discussion. Thus he said (p. 324, 81 S.Ct. p. 1618):

> "It is clear from the statements of the supporters of the predecessor of the Aviation Act—the Civil Aeronautics Act of 1938—that Congress was vitally concerned with what has been called 'security of route'—i. e., providing assurance to the carrier that its *investment in operations* would be protected insofar as reasonably possible. And there is no other explanation but that Congress delimited the Board's power to reconsider its awards with precisely this factor in mind; * * *." (Emphasis original.)

Again, in the same opinion, he made the following observations (p. 325, 81 S.Ct. p. 1619):

> " * * * it seems clear to us that Congress was relatively indifferent to the fluctuations an award might undergo prior to the time it affected practical relationships, but that Congress was vitally concerned with its security after the wheels had been set in motion. In light of this, we think the result we reach follows naturally: to the extent there are uncertainties over the Board's power to alter effective certificates, there is an identifiable congressional intent that these uncertainties be resolved in favor of the certificated carrier and that the specific instructions set out in the statute should not be modified by resort to such generalities as 'administrative flexibility' and 'implied powers.' "

A certificate issued to an air carrier partakes of the nature of a valuable franchise. While it is subject to the reserved power to amend and suspend, and to a limited authority to revoke on charges, it may not be cancelled or forfeited at the will of the Civil Aeronautics Board, even if the Board deems that it would be in the public interest so to do. The interests of the carrier and of its investors are protected to that extent.

■■ Manifestly, the Board may not achieve by indirection what it is powerless to accomplish directly. It may not avoid the statutory restriction on its authority by resorting to the device of substituting for the word "revoke", some other term that is synonymous or equivalent. A revocation remains a revocation, even if it is denominated "a termination". The word "terminate", which the Board seeks to substitute for "revoke", may be used in two different ways. As an intransitive verb, it means, to come to an end or to expire; as a transitive verb, it means, to bring to an end, to cancel or to eliminate. Obviously, the Board is employing the word in its transitive sense, and then it becomes synonymous with "revoke", "cancel" or "eliminate".

Thus, in Grant v. Aerodraulics Co., 91 Cal.App.2d 68, 204 P.2d 683, 686, a California appellate court stated that, "the words 'terminate,' 'revoke' and 'cancel,' " as used in a contract "all have the same meaning, namely, the abrogation of * * * the contract, * * *." Again, the Court says (204 P.2d p. 687), "To 'terminate' a contract, * * * means to abrogate so much of it as remains unperformed, * * *."

Similarly in Hampton v. Commercial Credit Corporation, 119 Mont. 476, 176 P.2d 270, 279, it was stated that termination or cancellation of a contract means the abrogation of so much of it as remains unperformed. In other words, "termination" and "cancellation" were deemed equivalent.

A decision of the Court of Appeals of New York, is on all fours. In the Matter of Glenram Wine & Liquor Corp. v. O'Connell, 295 N.Y. 336, 67 N.E.2d 570. There the State Liquor Authority sought to "cancel" a license rather than "revoke" it, because it was not empowered to do the latter under the circumstances. The Court held that "cancellation" and "revocation" were closely synonymous, and that the State could not deprive the licensee of his rights by calling its action a "cancellation". instead of a "revocation". Naturally, the same considerations would apply to an attempt to sup-

plant the term "revoke" by the word "terminate".

The tentative conclusion of the Board was that the Alaskan air service of Pan American "would be terminated, except at Fairbanks, which would be suspended until sixty days after the Board's decision in the Reopened Transpacific Route case". It can hardly be seriously contended that because the Board would terminate the route, except as to the Fairbanks terminal, but would suspend the Fairbanks terminal, the entire route would not be terminated. It is difficult to understand how it is possible to terminate a route with the exception of one of the two terminals and leave the latter in a state of suspension. A route must have two termini. Surely, it is not intended that the plaintiff might maintain intraurban air transportation within the city of Fairbanks, when the suspension would be lifted. Moreover, suspension for an indefinite term, amounts practically to a termination. No one can determine when the proceeding referred to in the suspension may be decided. Consequently, the device of suspending one terminal is meaningless and cannot be successfully used to avoid the limitations on revocation.

Finally, it is argued, apparently as an afterthought, that the plaintiff possesses a number of certificates granted to it by the Board from time to time, each covering a different route; that these certificates should be considered as a single entity; and that consequently the termination of any one of them is but a modification of the entirety, rather than the termination of a single certificate. The Court is of the opinion that this ingenious contention is untenable. There is no basis in the statute for treating all certificates granted to one air carrier as a single group, or as a single certificate. The Act, 49 U.S.C.A. § 1371, throughout speaks of a certificate in the singular. Subsection (e) specifically provides that "each certificate * * * shall specify the terminal points and intermediate points, if any, between which the air car-

rier is authorized to engage in air transportation". Subsection (g) which has already been discussed at length and which relates to modification and suspension, as well as revocation, also expressly uses the word "certificate" in the singular. It is clear that Congress contemplated that each certificate should be treated separately.

The reliance of the defendants on the decision of the Supreme Court in Delta Air Lines, Inc. v. Summerfield, 347 U.S. 74, 74 S.Ct. 350, 98 L.Ed. 513, in support of its contention on this point, is not well founded. That case related to an airmail subsidy, which naturally is paid in the discretion of the Government. The Court held that the need of the carrier for pecuniary aid must be measured by the entire financial requirement of the carrier and the entirety of its operations, rather than by the losses of one division or department. The statute expressly requires that in fixing airmail subsidies, the need of the carrier for financial assistance be considered, "together with all other revenue of the * * * carrier" 49 U.S.C.A. § 1376(b). There is no support in this decision for a contention that all certificates owned by the same carrier should be treated as a single certificate for the purposes of amendment or revocation.

In the light of the foregoing discussion, the Court reaches the conclusion that the Board has no legal authority to terminate or recommend the termination of the plaintiff's certificate of public convenience and necessity, and that the Board is exceeding its statutory authority in taking steps to accomplish this result.

There remains a procedural objection to be considered. The defendants urge that irrespective of the merits of the plaintiff's contention as to its substantive rights, this action may not be maintained on the ground that it is premature, and that the plaintiff should first exhaust its administrative remedy, namely, wait until the Board completes its hearings and investigation, makes its

final decision, and the President approves it. At the outset, it must be noted that while ordinarily orders of the Civil Aeronautics Board are subject to review by the Court of Appeals, 49 U.S.C.A. § 1486, a final order in the present proceeding would not be reviewable in this manner. Orders of the Board relating to overseas or foreign air transportation are subject to the approval of the President, 49 U.S.C.A. § 1461. This provision applies in this instance. The Supreme Court has held that such orders are not appealable to the Court of Appeals on the merits, since the action of the President involves the exercise of Executive discretion and may take into consideration such matters as national defense and foreign relations, and may be based on information not available to the courts, Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568. Government counsel do not deny that any final order of the Board in this proceeding will not be subject to review on the merits by the Court of Appeals.

In British Overseas Airways Corp. v. Civil Aeronautics Board, 304 F.2d 952, the Court of Appeals for the District of Columbia Circuit, while dismissing a petition for a review of an order in respect to a foreign air carrier, nevertheless expressly noted that its ruling was not to be construed as holding that there may not be a judicial remedy against administrative or even Presidential action beyond the scope of lawful authority. The petition was dismissed without prejudice to any proceeding in the District Court that might be thereafter brought. The position of the Government is, however, that an action for a declaratory judgment or for an injunction at this stage of the proceeding, is premature and does not lie until the plaintiff has exhausted his administrative remedies.

 Two considerations are involved in determining whether a suit for a declaratory judgment may be maintained. The first is whether a cause of action for a declaratory judgment is stated. The second is whether in the exercise of its discretion the Court should entertain the action, since, unlike other civil actions, the courts have discretion to entertain or reject a request for a declaratory judgment.

 The very purpose of declaratory judgments is obviously to make possible a determination of rights and liabilities before a controversy reaches a state at which one of the parties is in a position to sue for a remedy. When introduced into the law, declaratory judgments were regarded as a notable advance in legal procedure. The Federal courts may grant a declaratory judgment, however, solely if there is an actual controversy existing between the parties. This qualification is manifestly due to the principle that Federal courts may not render advisory opinions in view of constitutional limitations, but may decide only actual cases and controversies. In this instance, it is clear that an actual controversy has arisen. The Board has tentatively decided to terminate the plaintiff's certificate. It has announced its intention and has taken steps to carry this decision into effect, merely giving an opportunity to the plaintiff to show cause to the contrary. The plaintiff claims that legal power to terminate the certificate does not exist. There can be no doubt that an actual, justiciable controversy has ripened into being.

In this respect the instant case radically differs from Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784. There Peoples Bank brought an action for a declaratory judgment against the Federal Reserve Board to secure an adjudication that a certain regulation of the Board was void. The Bank averred that the regulation might have been violated by it, that the Board might enforce the regulation, and that the enforcement might require the withdrawal of the bank from the Federal Reserve System. The defendants replied that they had taken no steps to enforce the regulation against the bank, and had no present intention of so doing. The Court held that the action for a declaratory

judgment should not have been entertained, since the grievance of the bank was too remote and unsubstantial and too speculative in nature to justify either an injunction or a declaration of rights. No actual controversy had as yet matured. The Court observed, however, (p. 434, 68 S.Ct. p. 645):

"A determination of administrative authority may of course be made at the behest of one so immediately and truly injured by a regulation claimed to be invalid, that his need is sufficiently compelling to justify judicial intervention even before the completion of the administrative process."

In the case at bar the Civil Aeronautics Board has actually made a tentative decision against the plaintiff, has announced its intention to effectuate it, and has taken steps to do so. Unlike the situation in the Peoples Bank case, here, the controversy has obviously reached an active stage at which a declaration of rights is appropriate.

 As stated above, however, it is claimed that the Court should withhold its interposition until the administrative remedy has been exhausted and the Board renders a final decision, followed by Presidential approval. There are several reasons why this contention should not be sustained. While there is a general rule to the effect that ordinarily a party seeking relief against administrative action should first exhaust his administrative remedies, there are well recognized exceptions to this principle. The doctrine is frequently applied if it is contended that the administrative action would be erroneous. The requirement of exhaustion of administrative remedies has not been invoked, however, in cases in which a claim is advanced on substantial grounds that the administrative agency is transcending its legal authority, Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562, 39 S.Ct. 375,

63 L.Ed. 772 (Brandeis, J.); Chambers v. Robertson, 87 U.S.App.D.C. 91, 93, 183 F.2d 144; Interior Airways, Inc. v. Wien Alaska Airlines, Inc., D.C., 188 F.Supp. 107, 109.

Then, too, in this instance no judicial remedy can be sought between the time when the Board renders its decision and the date on which its order is transmitted to the President for approval, since the statute requires that the decision be submitted to the President before its publication by the Board, 49 U.S.C.A. § 1461. Consequently, there will be no interval between the decision of the Board and final action of the President during which judicial review can be sought.

Finally whether an action to review the decision of the President would lie is not a question that this Court should determine at this time. To intimate any opinion on it would be inappropriate. Suffice it to say, however, that serious problems of both adjective and substantive law may well arise in connection with any attempt to seek judicial review of Presidental action approving an order of the Board.[2] It was argued by able counsel for the Government that the plaintiff might pursue the same course as was followed in Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S. Ct. 863, 96 L.Ed. 1153, where an action was brought against the Secretary of Commerce to enjoin him from carrying out an order of the President. With commendable candor, however, counsel for the Government replied in the negative to an enquiry propounded by the Court whether he was in a position to commit the Government to a concession that such an action would lie and that the Government would not interpose any procedural objections to it. Manifestly, the plaintiff should not be remitted to a problematical remedy at some future date. A person should not be relegated to setting sail in a fragile bark, in order

2. Cf. Mississippi v. Johnson, 4 Wall. 475, 18 L.Ed. 437; Georgia v. Stanton, 6 Wall. 50, 18 L.Ed. 721; Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153.

to seek adventure on a partially charted sea.

The Court concludes that under the circumstances of this case, and for the reasons heretofore discussed, this action may be maintained at this time.

Accordingly, the motion of the defendants for summary judgment is denied. The motion of the plaintiff for summary judgment is granted to the extent that the Court will render a declaratory judgment that the plaintiff's certificate of public convenience and necessity involving the route here in question may not be terminated, either directly or indirectly except in revocation proceedings in accordance with the statute; and will grant a permanent injunction against the Civil Aeronautics Board restraining such proposed action. The Court will not enjoin the progress of the hearings since other matters may possibly be considered by the Board in this proceeding.

Counsel may submit a proposed judgment.