**In re HORIZON AIR, INC. d/b/a Mohawk Airlines, Debtor.**

No. 91–02301.

United States District Court, N.D. New York.

June 25, 1993.

Gary L. Sharpe, U.S. Atty., N.D.N.Y. (William F. Larkin, Asst. U.S. Atty., of counsel), Syracuse, NY.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey A. Dove and Mitchell J. Katz, of counsel), Syracuse, NY, for debtor.

### AMENDED MEMORANDUM– DECISION & ORDER [1]

MUNSON, Senior District Judge.

The matter *sub judice* involves issues of first impression concerning the interplay between two significant federal statutes, the Federal Aviation Act and the United States Bankruptcy Code. These issues evolved from the following unique chronology of events: an airline engaged in providing commuter air service pursuant to the Federal Aviation Act sought protection under the Bankruptcy Code; the airline subsequently had its air carrier operating certificate revoked pursuant to the Federal Aviation Act; in response, the airline now seeks relief from the revocation under the Bankruptcy Code. While apparently novel, this fact pattern is likely to repeat itself if the current trend of ever-increasing bankruptcy filings and the declining financial health of the airline industry, with the concomitant tendency to cut corners, continues.

### I. BACKGROUND

Horizon Air, Inc. d/b/a Mohawk Airlines ("Mohawk") is engaged in providing com-

---

**1.** The original Memorandum–Decision and Order was issued by the court on June 14, 1993.

muter air service under an air carrier operating certificate issued by the Federal Aviation Administration ("FAA") pursuant to 49 U.S.C.App. § 1424. Mohawk operates out of nine cities in the Northeastern United States and employs more than 75 individuals.

In 1991, the FAA conducted a thorough investigation of Mohawk's operations and facilities and concluded that certain violations of FAA regulations had occurred. The FAA asserted that by virtue of the alleged violations Mohawk was subject to in excess of $400,000 in penalties.

On August 12, 1991, Mohawk filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code ("the Code"). 11 U.S.C. § 1101 *et seq.* The case was referred to Judge Stephen D. Gerling, United States Bankruptcy Court Judge for the Northern District of New York, pursuant to 28 U.S.C. § 157(a). The FAA and Mohawk subsequently entered into a stipulation allowing the FAA a general unsecured claim in the amount of $100,000 representing the civil penalties

previously assessed against Mohawk. The stipulation was approved by the bankruptcy court on March 22, 1993. Since the filing of the bankruptcy petition, Mohawk has continued in possession of its property and management of its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107–08.

During May 1993, the FAA again reviewed Mohawk's operations. By letter dated May 25, 1993, the FAA advised Mohawk that it found certain discrepancies that may be violations of FAA regulations and gave Mohawk ten days in which to respond to the discrepancies either in writing or orally. On June 4, 1993, FAA personnel held a closed-door meeting at their regional office at LaGuardia Airport to discuss the Mohawk situation. At the conclusion of the meeting, Brunhilda Sanders-Lane, Acting Deputy Assistant Chief Counsel for the FAA's Eastern Region, signed an Emergency Order of Revocation ("Emergency Order") revoking Mohawk's air carrier certificate pursuant to 49 U.S.C.App. § 1429(a).[2] The Emergency Or-

---

**2.** Section 1429(a) provides:

The Secretary of Transportation may, from time to time, reinspect any civil aircraft, aircraft engine, propeller, appliance, air navigation facility, or air agency, or may reexamine any civil airman. If, as a result of any such reinspection or reexamination, or if, as a result of any other investigation made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest requires, the Secretary of Transportation may issue an order amending, modifying, suspending, or revoking, in whole or in part, any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate (including airport operating certificate), or air agency certificate. Prior to amending, modifying, suspending, or revoking any of the foregoing certificates, the Secretary of Transportation shall advise the holder thereof as to any charges or other reasons relied upon by the Secretary of Transportation for his proposed action and, except in cases of emergency, shall provide the holder of such a certificate an opportunity to answer any charges and be heard as to why such certificate should not be amended, modified, suspended, or revoked. Any person whose certificate is affected by such an order of the Secretary of Transportation under this section may appeal the Secretary of Transportation's order to the National Transportation Safety Board and the National Transportation

Safety Board may, after notice and hearing, amend, modify, or reverse the Secretary of Transportation's order if it finds that safety in air commerce or air transportation and the public interest do not require affirmation of the Secretary of Transportation's order. In the conduct of its hearings under this subsection, the Board shall not be bound by any findings of fact of the Administrator but shall be bound by all validly adopted interpretations of laws and regulations administered by the Federal Aviation Administration and of written agency policy guidance available to the public relating to sanctions to be imposed under this subsection unless the Board finds that any such interpretation is arbitrary, capricious, or otherwise not in accordance with law. The Board may, consistent with this subsection, modify the type of sanction to be imposed from suspension or revocation of a certificate to assessment of a civil penalty. The filing of an appeal with the National Transportation Safety Board shall stay the effectiveness of the Secretary of Transportation's order unless the Secretary of Transportation advises the National Transportation Safety Board that an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of his order, in which event the order shall remain effective and the Board shall finally dispose of the appeal within sixty days after being so advised by the Secretary of Transportation. A person substantially affected by an order of the Board under this subsection, or the

der contains thirty-two numbered paragraphs setting forth the circumstances under which Mohawk allegedly violated FAA regulations. It was served on Mohawk the following day, June 5, 1993, by Gordon H. Fellows, the Principal Airworthiness Inspector for the FAA's Flight Standards District Office in Rochester, New York.[3]

On Sunday June 6, Judge Gerling signed an *ex parte* order to show cause and temporary restraining order ("TRO") enjoining enforcement of the Emergency Order and scheduling a preliminary injunction hearing for June 9, 1993 at 2:00 p.m. On June 8, the government brought a motion before Judge Gerling to vacate the TRO, arguing that the bankruptcy court lacked both personal and subject matter jurisdiction over the matter. The motion was denied from the bench. The government immediately appealed Judge Gerling's decision to this court. The government also moved for withdrawal of reference of the preliminary injunction motion to the bankruptcy court in accordance with 28 U.S.C. § 157(d). On June 9, 1993, the day the preliminary injunction hearing was to commence before Judge Gerling, this court issued a ruling via telephone affirming the decision of Judge Gerling and denying the government's request for withdrawal of the reference.

The preliminary injunction hearing proceeded before Judge Gerling on June 9–11, 1993. On June 11, 1993, the government brought a motion before Judge Gerling for mandatory withdrawal of reference to the bankruptcy court and to vacate the TRO. The request was denied from the bench and the government again appealed Judge Gerling's decision to this court. The appeal came in the form of an "Emergency Motion to Reconsider Withdrawal of the Reference and to Vacate TRO." [4] The court reserved decision on the appeal and stated that an opinion would be issued on June 14, 1993.

Thus, presently before the court are two appeals: one of Judge Gerling's decision denying the government's motion to vacate the TRO issued on June 6, 1993, and the other of Judge Gerling's decision denying the government's motion for mandatory withdrawal of reference to the bankruptcy court. For the reasons stated below, the court withdraws reference of the preliminary injunction motion to the bankruptcy court, retains jurisdiction, issues the attached TRO, and sets this matter down for a hearing on June 15, 1993.

## II. DISCUSSION

### A. *Appellate Jurisdiction of the District Court*

■ A district court's jurisdiction to hear an appeal from a decision of the bankruptcy court is conferred by 28 U.S.C. § 158(a), which provides in pertinent part that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court from interlocutory orders and decrees, of bankruptcy judges...." Because the TRO issued by Judge Gerling is an interlocutory order, *Midland Mutual Life Ins. Co. v. Sellers*, 101 B.R. 921, 927 (S.D.Ohio 1989), the court must decide whether to exercise its appellate jurisdiction under § 158(a) before considering the government's appeal.

Debtor argues that the court should refuse to exercise its appellate jurisdiction because the government has disregarded various procedural requirements for taking

---

Administrator in any case in which the Administrator determines that such an order will have a significant adverse impact on the implementation of this Act, may obtain judicial review of such order under the provisions of section 1486 of this title. The Administrator shall be a party to all proceedings for judicial review under this subsection. In any such proceeding, the findings of fact of the Board shall be conclusive if supported by substantial evidence.
49 U.S.C.App. § 1429(a).

**3.** The FAA's Flight Standards District Offices are charged with inspecting the aircraft and operations of certified air carriers. In Central New York, the Flight Standards District Office is found in Rochester. Generally, the standards used by the FAA to evaluate safety are found at 14 C.F.R. § 121.1 *et seq.*

**4.** Although termed a motion for reconsideration, the government's motion is actually an appeal of Judge Gerling's decision and will be treated as such.

an appeal of a bankruptcy court decision. The procedure for appealing an interlocutory order of a bankruptcy court is set forth in Federal Rules of Bankruptcy Procedure 8001–19. Pursuant to Rule 8001(b), an interlocutory appeal is taken by filing a notice of appeal with the clerk of the bankruptcy court, accompanied by a motion for leave to appeal and with proof of service. If the motion for leave to appeal is granted, appellant has ten days within which to file a designation of items to be included in the record on appeal and a statement of issues to be presented. Fed.R.Bank.P. 8006. When the record on appeal is complete, the clerk of the bankruptcy court transmits a copy of the record to the district court clerk who in turn enters the appeal on the docket. Fed.R.Bank.P. 8007(b). Pursuant to Rule 8009, the parties are then permitted to file briefs with the district court.

While the government has admittedly failed to comply with the above-referenced procedural requirements for perfecting an interlocutory appeal of a bankruptcy court decision, due to the exigent nature of this proceeding the court chooses to exercise its discretion under 28 U.S.C. § 158(a) and Rules 8003(c) and 8019 of the Federal Rules of Bankruptcy Procedure to consider the government's appeal of Judge Gerling's interlocutory decisions. *See, e.g., In re Crisp*, 77 B.R. 215, 217–19 (W.D.Mo.1987) (district court reversed bankruptcy court's dismissal of appeal for failure to comply with a procedural rule because no indication of bad faith on the part of appellant or prejudice to appellee.)

### B. *Withdrawal of Reference to Bankruptcy Court*

The court will next address the government's argument that reference of this proceeding to the bankruptcy court must be withdrawn pursuant to the mandate contained in 28 U.S.C. § 157(d).

The statutory mechanism by which bankruptcy cases and other civil proceedings may be referred to the bankruptcy court is provided in 28 U.S.C. §§ 157–158. Section 157(a) states that: "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Pursuant to this section, this court routinely refers bankruptcy cases within the Northern District of New York to the bankruptcy court.

Section 157(d) permits the district court to withdraw its reference of a bankruptcy petition or any case or proceeding relating to the petition as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section on its own motion or on timely motion of any party, for cause shown. The district court *shall,* on its own motion or on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

The mandatory withdrawal provision contained in § 157(d) has been interpreted to "require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991). In other words, where the bankruptcy judge would have to engage in "something more than the mere process of examining, thinking about or taking into account" federal laws outside of the Code, § 157(d) mandates withdrawal. *In re American Freight System, Inc.*, 150 B.R. 790, 792 (D.Kan.1993) (citing *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D.Ohio 1984)). "The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of statutes outside the Bankruptcy Code." *Eastern Airlines, Inc. v. ALPA*, 1990 Westlaw 5203, *5 (S.D.N.Y. Jan. 24, 1990) (citing 1 L. King, Collier on

Bankruptcy, ¶ 3.01, at 3–66–67 (15th ed. 1989)).

In the case at bar, the bankruptcy court has been called upon to determine whether Mohawk is likely to succeed on the merits of its claim that an emergency did not to exist under 49 U.S.C.App. § 1429(a) at the time the FAA issued its Emergency Order. *See infra* at 379. According to counsel for the government, Judge Gerling has been asked to interpret several provisions of the Federal Aviation Act, including 49 U.S.C.App. §§ 1429, 1485 & 1486. In addition, disputes have arisen during the preliminary injunction hearing concerning the interrelationship of these statutory provisions and FAA regulations. Clearly, the Federal Aviation Act and its regulations are rooted in the commerce clause and are the type of laws that Congress intended to have decided by Article III judges when it enacted the mandatory with provision. *See Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 38 (D.Del. 1989) (and cases cited therein). Because resolution of the preliminary injunction motion requires substantial and material consideration of a non-Code statute regulating interstate commerce, the proceeding is hereby removed from the bankruptcy court to this court pursuant to 28 U.S.C. 157(d).[5] The original reference of the bankruptcy petition remains with the bankruptcy court. *See Hatzel & Buehler*, 107 B.R. at 39 n. 3 (court withdrew adversary proceeding pursuant to § 157(d) while leaving intact the

original referral of the bankruptcy petition to the bankruptcy court).

### C. *Personal Jurisdiction of the District Court*

The court turns next to the government's argument that the court lacks personal jurisdiction over it because the government is immune from suit. Specifically, the government argues that it has not waived its sovereign immunity under any provision of the Code. The court finds that the government has waived its immunity to suit pursuant to 11 U.S.C. § 106(c), and therefore the court does have personal jurisdiction over the government.[6]

In determining whether the government has waived its sovereign immunity, the court is guided by the touchstones that: 1) waivers, to be effective, must be "unequivocally expressed", and 2) "the Government's consent to be sued 'must be construed strictly in favor of the sovereign.'" *United States v. Nordic Village, Inc.*, —— U.S. ——, ——, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992) (interpreting 11 U.S.C. § 106(c)) (internal citations omitted).

In bankruptcy cases, a distinct and limited waiver of sovereign immunity is contained in 11 U.S.C. § 106. Section 106(c) provides, in pertinent part, that notwithstanding any assertion of sovereign immunity

---

**5.** While the court acknowledges that it has no more experience than Judge Gerling in interpreting these particular provisions of the Federal Aviation Act, cases construing § 157(d) make clear that when a bankruptcy court is called upon to interpret statutes outside its realm of expertise, the district court is required to remove the reference. *See e.g., AT & T Co. v. Chateaugay Corp.*, 88 B.R. 581, 583 (S.D.N.Y. 1988) ("Section 157(d) reflects Congress's perception that specialized courts should be limited in their control over matters outside their areas of expertise.").

Debtor also argues in opposition to the government's motion for withdrawal of reference to the bankruptcy court that the motion was not brought in a "timely" manner as required by § 157(d). The court disagrees. The government moved this court for withdrawal on June

8, 1992, only two days after the bankruptcy court issued the temporary restraining order and one day before the preliminary injunction hearing commenced. *See supra* at 372. Such a minor delay does not lead the court to conclude that the government's motion was untimely. *See In re Stavriotis*, 111 B.R. 154, 158 (N.D.Ill. 1990) (motions for withdrawal should be filed "as soon as possible after the grounds for withdrawal become clear."); *In re Giorgio*, 50 B.R. 327, 329 (D.R.I.1985) ("timely" means "at first reasonable opportunity").

**6.** In rendering its decision via telephone on June 9, 1993, the court mistakenly stated that 11 U.S.C. § 106(a) operated as a waiver of the government's sovereign immunity. As discussed *infra*, the court concludes that § 106(c) acts as a waiver.

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Thus, § 106(c) provides for "a waiver of sovereign immunity to the extent that an order of the bankruptcy court will bind a governmental unit when the court makes a determination and issues an order pursuant to a Code section allowing the court to bind a 'creditor', 'entity', or 'governmental unit'." *In re Prudential Lines, Inc.*, 79 B.R. 167, 181 (Bkrtcy.S.D.N.Y.1987).

Debtor's challenge to the Emergency Order issued by the FAA implicates 11 U.S.C. § 362(b)(4), which provides that the Code's automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]" Should the court determine that the Emergency Order was properly issued by the FAA, the court will invoke § 362(b)(4) to rule that the automatic stay does not apply to this controversy. Thus, the FAA will be permitted to revoke Mohawk's air carrier operating certificate as an exercise of that governmental unit's police power. Conversely, if the court determines that the Emergency Order was not properly issued, the FAA will not be permitted to enforce its order. Because the court is authorized to "bind" the governmental unit known as the FAA by permitting or rejecting its attempt to exercise its police power under § 362(b)(4), this case fits within the narrow parameters of § 106(c). Therefore, the court rules that the government has waived its sovereign immunity for purposes of the controversy before the court.

**D. *Subject Matter Jurisdiction of the District Court*[7]**

█ The district courts' subject matter jurisdiction over bankruptcy matters is defined by 28 U.S.C. §§ 157 and 1334. Section 1334(b) states, in relevant part, that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Cases and proceedings which "arise under" or "arise in" title 11 are considered "core proceedings" pursuant to 28 U.S.C. § 157(b)(1).[8] *Plaza at Latham Associates v. Citicorp North America*, 150 B.R. 507, 510 (N.D.N.Y.1993) (Munson, S.J.). Section 157(b)(2)(A) through (O) sets forth a nonexclusive, representative list of core proceedings. Most significant from the standpoint of the instant appeal, 28 U.S.C. § 157(b)(2) states in pertinent part: "Core proceedings include, but are not limited to—(E) orders to turn over property of the estate."

Section 541(a) of the Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). "Congress intended a broad range of property to be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 and n. 9, 103 S.Ct. 2309, 2313 and n. 9, 76 L.Ed.2d 515 (1983). A right, privilege, or license to operate or do business, granted or issued under state or federal law, is generally held to be property of the estate. *In re Draughon Training Institute, Inc.*, 119 B.R. 921, 926 (Bkrtcy.W.D.La.1990) (and cases cited therein).

In this case, the Emergency Order specifically requires Mohawk to "surrender" its air carrier operating certificate to the FAA. Exhibit A attached to Debtor's Order to Show Cause with Temporary Restraining Order. As such, the first requirement for

**7.** At oral argument before this court on June 11, 1993, the government did not contest that the district court has subject matter jurisdiction over this proceeding.

**8.** Section 157(b)(1) states:
Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
28 U.S.C. § 157(b)(1).

finding this to be a core proceeding under § 157(b)(2)(E), namely that Mohawk is required to "turn over" property of the estate, is satisfied. The only remaining issue is whether Mohawk's air carrier operating certificate constitutes "property of the estate" under § 541(a). Mohawk asserts that it does. The government argues that the certificate is not property of the estate, but rather is a restriction on the use of property. The government analogizes the air carrier operating certificate to an airport landing slot, which several courts have determined is not property of the estate. *See In re Braniff Airways, Inc.*, 700 F.2d 935, 942 (5th Cir.1983); *In re Air Illinois, Inc.*, 53 B.R. 1, 2 (Bkrtcy.S.D.Ill.1985).

The court is unpersuaded by the government's argument and concludes that Mohawk's air carrier operating certificate is property of the bankruptcy estate as defined by 11 U.S.C. § 541(a). An air carrier operating certificate is a significant property interest which entitles the holder to commence airline operations, which in turn involves a considerable investment of capital. *See Nevada Airlines v. Bond*, 622 F.2d 1017, 1019–20 (9th Cir.1980) (holding that air carrier operating certificate is "a significant property interest"); *Pan American World Airways, Inc. v. Boyd*, 207 F.Supp. 152, 156 (D.D.C.1962) ("A certificate of public convenience and necessity ... is valuable property and should not be lightly dealt with once the certificate holder starts operations, which necessarily involve a considerable investment of funds and create employment."). Although the FAA may order the surrender of an air carrier operating certificate at any time, until such action is taken the holder has a possessory interest in the certificate. The mere fact that the certificate is issued and regulated by the FAA does not preclude the certificate from being treated as a property right. *See In re American Central Airlines, Inc.*, 52 B.R. 567, 571 (Bkrtcy.N.D.Iowa 1985) (airport landing slots held to be a property right although created and regulated by government). As one court in this Circuit explained:

> To hold otherwise would be to rule ... that a property interest subject to regu-

lation, as nearly all are, or conditioned upon regulatory requirements, is not property of an estate. Such a ruling would contemplate that all licenses and permits issued by governmental units are not property of the estate....

> Far more consistent with general Congressional intent as found by *Whiting Pools*[, 462 U.S. at 198, 103 S.Ct. at 2310] is to construe such rights as within the definition of property of an estate, to recognize, as discussed *infra*, that valid regulation continues post-petition as provided in 28 U.S.C. § 959(b) (1978) and to apply the evident Congressional intent, reflected in §§ 362(b)(4) and (b)(5) of the Code, that good faith enforcement by governmental units of valid regulation is to be permitted to continue.

*In re Beker Industries Corp.*, 57 B.R. 611, 622 (Bkrtcy.S.D.N.Y.1986). Further, the fact that Mohawk's air carrier operating certificate is non-assignable does not prevent the certificate from becoming property of the bankruptcy estate. *See In re Fugazy Exports, Inc.*, 114 B.R. 865, 870 (Bkrtcy.S.D.N.Y.1990) (holding that non-transferable FCC license is property of estate), *aff'd* 124 B.R. 426, 430 (S.D.N.Y. 1991), *appeal dismissed*, 982 F.2d 769 (2d Cir.1992). Under § 541(c)(1)(A) of the Code, property of the debtor becomes property of the estate notwithstanding any applicable non-bankruptcy law provision "that restricts or conditions transfer of such interest by the debtor." Thus, the fact that the air carrier operating certificate is not transferable does not prevent it from becoming property of the estate upon Mohawk's filing for bankruptcy. *See In re Draughon Training Institute, Inc.*, 119 B.R. 927, 931 (Bkrtcy.W.D.La.1990).

The court is of the opinion that an air carrier operating certificate is analogous to a radio call sign license issued by the Federal Communications Commission ("FCC"), which also has been held to be property of the estate. *See Fugazy*, 114 B.R. at 869–71. A radio call sign license is subject to regulation by an administrative agency, namely the FCC, and can not be transferred without the FCC's approval. *Id.* at

870. Similarly, an air carrier operating certificate is subject to regulation by the FAA and is non-assignable. Nevertheless, both the FAA certificate and FCC license are primary assets in the bankruptcy estate. *See also Pastrana v. United States*, 746 F.2d 1447, 1450 (11th Cir.1984) (holding that pilot certificate "is a cognizable property interest protectable by the procedural due process requirement of the fifth amendment."); *In re Rocky Mountain Trucking Co., Inc.*, 47 B.R. 1020, 1021 (Bkrtcy.D.Col.1985) (holding that a certificate of public convenience and necessity issued to common carrier is "property" of the estate).

Finally, the court finds neither *In re Braniff Airways* nor *In re Air Illinois* controlling here. With regard to *Braniff*, the court is persuaded by the following analysis contained in *In re American Central Airlines, Inc.:*

> The *Braniff* court improperly narrowed the scope of 11 U.S.C. § 541. The *Braniff* court stated that airport "slots are actually restrictions on the use of property—airplanes; not property in themselves." *In re Braniff Airways*, [700 F.2d] at 942. The slots do indeed effect a restraint on the use of airplanes, however, possession of an airport slot also entitles the holder to airport access at selected times. Although the FAA may remove a slot at any time, until such action is taken, the holder has a possessory interest in a slot at the given airport. Such a possessory interest must constitute property of the estate. H.Rep. No. 595, 95th Cong., 1st Sess. 367; S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS pp. 5868, 6326. The mere fact that an interest exists by the grace of government no longer precludes the interest from being treated as a property right. *Matter of Matto's, Inc.*, 9 B.R. 89, 91 (Bkrtcy.E.D.Mich.1981).

*In re American Central Airlines, Inc.*, 52 B.R. at 570–71; *see also In re McClain Airlines, Inc.*, 80 B.R. 175, 178 (Bkrtcy. D.Ariz.1987); *In re Beker Industries*, 57 B.R. at 622. For the same reasons, this court declines to follow *Braniff.*

In *In re Air Illinois*, the court relied on 49 U.S.C.App. § 1371(i) to conclude that airport landing slots are not property of the estate. 53 B.R. at 2. Section 1371(i) states: "No certificate shall confer any proprietary, property or exclusive right in the use of any airspace, federal airway, landing area of air-navigation facility." 49 U.S.C.App. § 1371(i). The certificate referred to in § 1371(i) is a certificate of public convenience and necessity issued by the Department of Transportation. That certificate is completely separate and distinct from an air carrier operating certificate issued by the FAA. *In re TPI Int'l Airways, Inc.*, 141 B.R. 512, 513 n. 1 (S.D.Ga.1992). Therefore, the language in § 1371(i) is inapplicable to the present case and so is the rationale of *Air Illinois.*

In sum, the court finds that Mohawk's air carrier operating certificate constitutes property of the estate pursuant to 11 U.S.C. § 541(a). Because one potential ruling on the preliminary injunction motion would require Mohawk to turn over its certificate to the FAA and thereby remove property from the estate, the court concludes that it has subject matter jurisdiction over this proceeding based upon 28 U.S.C. § 157(b)(2)(E).

### E. *Defer to the Courts of Appeals*

■ The court must next decide whether it should defer resolution of this matter to the United States Court of Appeals for the Second Circuit or the United States Court of Appeals for the District of Columbia. As discussed above, this court has subject matter jurisdiction over the preliminary injunction motion proceedings based upon 28 U.S.C. §§ 157(b)(2)(E) and 1334(b). But under 49 U.S.C.App. § 1486,[9] the courts of

---

9. Section 1486 provides, in pertinent part:
   (a) Any order, affirmative or negative, issued by the Board or Secretary of Transportation under this Act, except any order in respect of any foreign air carrier subject to the approval of the

President as provided in section 1461 of this title shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the

appeals are given exclusive jurisdiction over lawsuits which challenge the propriety of emergency revocation orders issued by the FAA. The effect of these overlapping jurisdictional mandates is to give both a district court and a court of appeals concurrent original jurisdiction over a proceeding such as this. *See Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 385–86 (3rd Cir.1987) (Third Circuit concluded that it had concurrent, original jurisdiction with district court over an OSHA citation issued against Chapter 11 debtor). As such, this court must decide if it should defer to the courts of appeals for resolution of the instant matter.

This case is factually analogous to *Brock*, in which the Secretary of Labor sought to enforce an Occupational Safety and Health Administration ("OSHA") citation against a Chapter 11 debtor. 829 F.2d at 383. Under the OSHA statute, jurisdiction over enforcement of the citation is vested exclusively with the courts of appeals. *Id.* at 385 (citing 29 U.S.C. § 660(b)). Nevertheless, the Third Circuit concluded that the district court had concurrent, original jurisdiction over the Secretary's petition based upon the district court's Title 11 jurisdiction. *Id.* (citing 28 U.S.C. § 1334(b)). In deciding whether to defer to the district court, the Third Circuit considered the purpose behind both section 660(b) and section 1334(b). Given that both jurisdictional statutes exist to allow the expeditious resolution of controversies such as the one before it, the court determined that "no purpose would be served if we were to defer to the district court for it to exercise the original, non-exclusive jurisdiction it shares with us." *Id.* at 386. The court went on to expeditiously rule on the matter at hand. *Id.* at 387.

■ Similarly, 28 U.S.C. § 1334(b) and 49 U.S.C.App. § 1486 share the common goal of expediting the controversy at hand. Authorizing the district court to resolve

disputes that go to the core of the debtor's bankruptcy pursuant to 28 U.S.C. § 1334(b) permits expeditious completion of the bankruptcy proceedings without the necessity of awaiting the outcome of state or federal trials to resolve those core issues. Likewise, the jurisdictional grant of 49 U.S.C.App. § 1486 exists to allow the expeditious resolution of appeals from emergency determinations of the FAA. *E.g., Blackman v. Busey*, 938 F.2d 659, 664 (6th Cir.1991) (60–day period to schedule hearing under 49 U.S.C.App. § 1429 is "set so as to expedite a hearing before a body capable of overruling the [FAA's] emergency revocation"). An emergency revocation results in the immediate loss of an air carrier's operating certificate. Due to the serious nature of this action, Congress intended § 1486 to provide for a mechanism of immediate review to the courts of appeals. In the context of this case, it is evident that §§ 1334(b) and 1486 serve essentially the same jurisdictional goal, that is, a speedy resolution of the dispute. Thus, no purpose would be served if the court were to defer to either the Second Circuit or the District of Columbia Circuit to exercise the original, non-exclusive jurisdiction they share with this court. Transferring this petition would work contrary to the stated purpose of 49 U.S.C.App. § 1486 by occasioning delay as yet another court familiarizes itself with the facts of the controversy. Hence, rather than providing for expeditious review, it would hinder the intended summary process. For this reason, the court will retain jurisdiction over this proceeding.

### F. *Effect of Withdrawal of Reference on Existing TRO*

This court's decision that it must withdraw reference of the preliminary injunction motion to the bankruptcy court pursuant to 28 U.S.C. § 157(d) leaves an issue as to the continuing validity of the bankruptcy

entry of such order, by any person disclosing a substantial interest in such order. After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition theretofore.

(b) A petition under this section shall be filed in the court for the circuit wherein the petitioner resides or has his principal place of business or in the United States Court of Appeals for the District of Columbia.
*49 U.S.C.App. § 1486.*

court's June 6, 1993 TRO. To prevent any question about whether the FAA may enforce its Emergency Order dated June 4, 1993 during the pendency of the controversy at bar, this court hereby vacates the bankruptcy court's June 6, 1993 TRO and issues the attached TRO restraining enforcement of the FAA's Emergency Order under the terms set forth therein.

## G.  *Schedule and Standard of Review*

Due to the importunate nature of this case and the mutual request of the parties to proceed expeditiously, the court directs that a hearing on Mohawk's motion for a preliminary injunction be held on Tuesday, June 15, 1993 at 9:00 a.m. at the United States Courthouse in Syracuse, New York. Each party will be given up to four hours to present its case to the court. Although the court will not limit the number of exhibits and witness summaries that may be introduced by counsel at the hearing, *no* live witness testimony will be permitted. The court will issue a summary order either granting or denying the preliminary injunction motion by 10:00 a.m. on June 16, 1993. A more lengthy opinion setting forth the court's rationale for its decision will be issued sometime thereafter.

To assist the parties in preparing for the hearing, the court will briefly set forth the standard of review in this case. In cases such as this, where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, injunctive relief is appropriate if the moving party establishes:

(1) it is likely to succeed on the merits of its claims, and

(2) it will suffer irreparable harm if it is not granted the temporary relief it seeks.

*O'Malley v. City of Syracuse*, 813 F.Supp. 133, 140 (N.D.N.Y.1993) (Munson, S.J.) (citing *Plaza Health Lab., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)).

In determining whether Mohawk is likely to succeed on the merits of its claim, the court will limit its review to considering whether the FAA's finding of an emergency was "arbitrary and capricious, an abuse

of discretion, or otherwise not in accordance with law." *Nevada Airlines*, 622 F.2d at 1020 (internal citations omitted). In other words, Mohawk "must demonstrate a substantial likelihood that the emergency determination was a 'clear error of judgment' lacking any rational basis in fact." *Blackman*, 938 F.2d at 663 (quoting *Nevada Airlines*, 622 F.2d at 1021).

## III.  CONCLUSION

In summary, the court withdraws reference of the preliminary injunction proceeding to the bankruptcy court, retains jurisdiction, and sets this matter down for a hearing on June 15, 1993. The court also issues the attached TRO to restrain enforcement of the FAA's Emergency Order of Revocation dated June 4, 1993 pending resolution of debtor's preliminary injunction motion.

It is So Ordered.